## Staunton

BALLARD SMITH v. THE PITTSTON COMPANY, A CORPORATION.

August 31, 1962.

Record No. 5442.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Brantley B. Griffith* and *Fred C. Parks,* for the plaintiff in error.

*A. G. Lively* and *G. R. C. Stuart (Penn, Stuart & Stuart,* on brief), for the defendant in error.

Spratley, J., delivered the opinion of the court.

This is an action brought by Ballard Smith, plaintiff, to recover of the Pittston Company, defendant, damages for injury resulting from the maintenance and operation of a coal preparation plant by the defendant. The motion for judgment alleged that defendant, in the operation of the plant, engaged in washing, crushing and processing coal, caused smoke, soot, dust, cinders, ashes, and other waste substances to be emitted from the smokestacks of the said plant, which settling upon the land of the plaintiff, tainted the atmosphere and his water supply, rendered his dwelling and outbuildings unhealthy and unfit for habitation, and destroyed the vegetation and agricultural products growing on his land, whereby his personal property and land had been reduced in value.

The defendant filed its grounds of defense denying that the operation of its plant had caused plaintiff any damage for which it was liable. It took the position that if plaintiff suffered any damage, a large steam generating plant for the production of electricity, owned by the Appalachian Power Company, was a major contributor thereto, and plaintiff had failed to show what part of his damage resulted from the acts of the defendant.

There was a trial before a jury, and a verdict was rendered for the defendant. We granted plaintiff this writ.

There are several assignments of error; but no cross-error. Plaintiff contends that the court erred in granting certain instructions offered by the defendant; in refusing and in admitting certain evidence; and in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

The critical issue in the case to be determined by a jury was whether plaintiff suffered any material damage from the operation of defendant's coal preparation plant. If that were answered in the affirmative, the next issue was whether the damage was occasioned, in part, by one other than the defendant, or by other causes, and, if so, whether plaintiff had shown what part thereof was chargeable to the defendant.

The evidence is rather voluminous, and we shall confine ourselves to that which has a bearing on the pertinent questions involved.

The plaintiff, Ballard Smith, is the owner of a 100-acre farm, adjoining lands of the defendant, in Russell county, Virginia. A portion of his farm is in a limestone area suitable for the production of agricultural products and the grazing of livestock, and had been so used. By reason of many coal deposits, the area is specially adaptable to the production and processing of coal.

In 1958, defendant constructed and placed in operation on its land a large coal preparation plant for washing, cleaning and processing coal for the market, and a light aggregate plant for processing some of the products of the preparation plant. The coal preparation plant was located 3,000 feet from the dwelling on plaintiff's farm, and the light aggregate plant about 11,500 feet from that dwelling. In the preparation plant, raw coal, containing rock and slate, is brought to the plant, crushed into small particles, mixed with water and chemicals, and run through centrifugal and thermo driers to separate the slate and rock from the usable coal. Heat is supplied by coal-burning furnaces of the plant. The moisture in the mixtures is driven off and goes up smokestacks in the form of smoke. This smoke contains small particles of dust and waste substances, which dust-control devices installed in the plant are unable to eliminate.

We are told that the raw coal contains at least 30% of rock and reject material. Fifteen hundred tons of raw coal are put into the plant each hour, out of which 1,000 tons of clean coal are obtained. The remaining 500 tons constitute refuse materials. Approximately 20,000 tons of clean coal are processed in the plant daily, in which procedure 10,000 or 12,000 tons are rejected as refuse. In 1960, the plant processed 1,227,000 tons of clean coal. The plant discharges an average of 640 pounds of dust per hour from its stacks, about 6 tons per day. It worked 247 days in 1960, at an average of 17½ hours per day.

The smoke from the preparation plant is black in color, and there is evidence that at times it is so dense as to create a heavy fog. When the wind blows in the direction of plaintiff's land, this smoke, small particles of dust and other waste substances associated with it settle on plaintiff's farm and buildings. Samples of the dust and waste matter were introduced in evidence. One witness said that the dust appeared to contain an oily, clinging material. Settling upon the vegetation and agricultural products, it rendered them more or less unfit for use or sale. According to the plaintiff's evidence, the smoke,

cinders and soot seeped through the doors and windows of his dwelling, injured his food, his clothes and habitation, and settled upon the water in his cistern and ponds, thereby depreciating the market value of his property.

It appeared that smoke from the plant of the Appalachian Power Company passed over plaintiff's farm. It contained a small amount of white dust or "fly ash." While a witness for the defendant expressed the opinion that such dust, produced by the Appalachian plant would be "suspended" over plaintiff's property, there was no evidence that it was a source of damage to his property.

On the part of the defendant, there was evidence, admitted over the objection of the plaintiff, that its plant was located in an industrial community; that it had spent large sums of money in installing modern dust-control devices; that those devices had reduced the emission of waste particles from its smokestacks to a minimum; that no damage was caused by any objectionable substance from its plant settling on plaintiff's farm; that damage, if any, perhaps arose from other causes, and particularly from the operation of a large plant of the Appalachian Power Company, located about 10,800 feet from plaintiff's farm; and that the value of the farm had not been depreciated because the maintenance and operation of the coal preparation plant had improved the economic situation of the whole area and benefited the plaintiff and all adjoining landowners.

The court, at the request of the plaintiff, defined a private nuisance, and instructed the jury that one who creates such a nuisance is liable for the resulting injury to others, "regardless of the degree of care or skill exercised to avoid such injury;" that the defendant was bound so to locate, construct and operate its plant "as not to inflict any injury on the property, or invade the rights of others," and if it operated its plant "as to interfere with and disturb the full and complete enjoyment of the plaintiff of his property as a farm, then it must pay plaintiff such damages as would compensate him for the injuries thereby sustained;" that every person has a right to use his property for any purpose "so long as such use does not interfere with the comfortable use and enjoyment of the adjacent property by its owner," and that "any operation of a coal preparation plant which causes a large amount of smoke, soot, cinders, ashes or other waste materials, to the detriment of the reasonable use of adjoining property and which constitutes a nuisance, gives the owner of such adjoining property a right to recover such sum as will compensate for such damage as may be sustained thereby."

On the part of defendant, and over the objection of plaintiff, the court gave instructions numbered 4, 5, 7, 8 and 9, hereinafter referred to.

■ Instruction No. 4 told the jury that if they believed the damages claimed by plaintiff "were caused in part by the defendant and in part by the Appalachian Power Company, or any other source, and if the evidence fails to show the part or amount of damages caused by defendant, then you cannot find against the defendant in this case."

It is true that where damages are occasioned by a combination of causes originating from different sources, it is for the jury to determine from the evidence what part is attributable to a defendant and what part to other persons or other causes. The burden is on a plaintiff to produce evidence which will show "within a reasonable degree of certainty" the share of the defendant therein. *Panther Coal Co.* v. *Looney*, 185 Va. 758, 772, 40 S. E. 2d 298; *Heldt* v. *Tunnel District*, 196 Va. 477, 484, 84 S. E. 2d 511.

The vice in Instruction No. 4 is that it put the burden on the plaintiff to prove the exact amount of damages caused by the defendant under the circumstances mentioned, when absolute certainty in such a case is not attainable and is not required. *Southern Railway Co.* v. *McMenamin*, 113 Va. 121, 129, 73 S. E. 980; 14 Michie's Jur., Nuisances, § 45, pages 50 and 51; 66 C. J. S., Nuisances, § 151, page 959; 39 Am. Jur., Nuisances, § 128, page 389.

■ Instructions numbered 5, 8 and 9 told the jury that the burden was on the plaintiff to prove that the "dust" or "dust-fall" upon plaintiff's property caused by defendant's operation was "both substantial and unreasonable, * * *." Plaintiff objected to each of these instructions upon the ground that they were finding instructions based upon a partial, incomplete and inadequate statement of the facts. He points out that they excluded from the consideration of the jury evidence that the property had been damaged by causes other than those detailed in the instructions, that is, from smoke, cinders, ashes, fog, and oily substances.

We have held time after time that it is error to give an instruction directing a finding on an incomplete and partial view of the evidence. *Atlantic Coast Line* v. *Newton*, 118 Va. 222, 227, 87 S. E. 618; *Wilkins* v. *Henderson*, 123 Va. 275, 278, 96 S. E. 163; *Heldt* v. *Tunnel District, supra*, 196 Va. page 485.

■ Instructions numbered 7 and 8 are argumentative, confusing and contrary to the instructions given at the request of the

plaintiff. Instruction No. 7[1] told the jury that in determining whether or not plaintiff suffered damage of a substantial nature, they should consider the character of the area in which defendant's plant is located, and if they found plaintiff "subjected to inconvenience, annoyance or damage which is not substantial, because of the industrial use being made of nearby properties, and if such industrial use is reasonable when the character of the area is considered," then plaintiff was not entitled to recover damages from the defendant.

Instruction No. 8[2] told the jury that they should take into consideration the location of defendant's plant, its operation, the nature and character of the surrounding community with respect to the purposes for which it is adapted, the "extent of the dustfall resulting" from operations of the plant, and all other pertinent facts and circumstances, and determine "whether defendant's operations were unreasonable and have caused substantial damage to the plaintiff."

Neither Instruction 7 nor 8 lays down any standard to guide the jury. Each appeals to the prejudice of the jury upon irrelevant matters. Each told the jury, in effect, that the natural rights of particular persons must give way to the rights of trade and industry, a theory which we have rejected in this jurisdiction. *Shoffner* v. *Sutherland*, 111 Va. 298, 68 S. E. 996; *Arminius Chemical Co.* v. *Landrum*, 113 Va. 7, 73 S. E. 459, 38 L. R. A. (N. S.) 272, Ann.

[1] "The Court instructs the jury that ordinarily a property owner is entitled to have the undisturbed enjoyment of his property free from any outside interference. However, this is not an absolute rule which applies to all types of situations and localities. In a locality which is characterized by coal mining or other industrial uses, a property owner may, under certain circumstances, be required to submit to some inconvenience, annoyance or damage which are not substantial in nature and extent, when considered in the light of the character of the area in which the property is located. Accordingly, if a property owner is subjected to inconvenience, annoyance or damage which is not substantial, because of the industrial use being made of nearby properties, and if such industrial use is reasonable when the character of the area is considered, then a property owner is not entitled to recover damages from the Company which is using its property for industrial purposes."

[2] "The Court instructs the jury that, in considering the question of whether or not the acts of the Defendant complained of are unreasonable and have caused substantial damage to the Plaintiff's property, you may take into consideration, as far as shown by the evidence, the location of the Plaintiff's property and the Defendant's operations, the nature and character of the surrounding community with respect to the purposes for which it is adapted, the character and extent of the allegedly offending substances, the extent of the dust-fall resulting from the Defendant's operations and the character and its effect upon persons of normal sensibility, and all other pertinent surrounding facts and circumstances shown by the evidence, and from these determine the issue as to whether the defendant's operations were unreasonable and have caused substantial damage to the Plaintiff."

Cas. 1913 D, 1075; *Virginian Railway Co.* v. *London*, 114 Va. 334, 76 S. E. 306; *Panther Coal Co.* v. *Looney, supra,* 185 Va., pages 763, 764.

It is generally held that the location of an industry in an industrial area and its importance to the wealth and prosperity of the community do not give to it rights superior to the primary or natural rights of those who live nearby. Locality and surroundings are to be taken into consideration only in determining whether the business or industry is so conducted as to constitute a nuisance as a matter of fact. 39 Am. Jur., Nuisances, § 44, pages 325, 326; 66 C. J. S., Nuisances, § 13, pages 757, 758. It is of no consequence that an industry or a business is a useful or necessary one, or that it promotes the development of the community. *Townsend* v. *Norfolk Ry. & L. Co.,* 105 Va. 22, 49, 52 S. E. 970, 4 L. R. A. (N. S.) 87, 115 Am. St. Rep. 842, 8 Ann. Cas. 558; 39 Am. Jur., Nuisances, § 45, pages 327, 328; 66 C. J. S., Nuisances, § 143, page 951.

The issue here was not whether defendant's coal preparation plant was located in an industrial area, nor whether plaintiff's damage was unsubstantial, "because of the industrial use being made of nearby properties," nor whether the operation of defendant's plant was "reasonable when the character of the area is considered," but whether or not its operation caused substantial damage to the plaintiff, regardless of the location of the plant and the nature and importance of its operation.

Plaintiff does not here complain about the place where defendant operates its plant; but of the injury inflicted upon his property by the operation of the plant. "It is the annoyance and injury to others that the law regards, and not the business creating the annoyance." *G. L. Webster Co.* v. *Steelman*, 172 Va. 342, 367, 1 S. E. 2d 305.

In *G. L. Webster Co.* v. *Steelman, supra,* 172 Va., page 367, we said:

"However important may be the successful operation of the business of the defendant to its stockholders, or to the farmers and laborers in the surrounding country, that cannot be the standard by which to measure the rights of others, or a reason to confer upon it the right to destroy or to injure the property of another without just compensation to the injured person. 'But if a business be necessary or useful, it is always presumable that there is a proper place and a proper manner for carrying it on; in other words, that it may be carried on without being a nuisance.' Cooley on Torts, section 433.

It is the annoyance and injury to another that the law regards, and not the business creating the annoyance."

In *Bragg* v. *Ives*, 149 Va. 482, 496, 140 S. E. 656, quoting from *Ross* v. *Butler*, 19 N. J. Eq. 294, 97 Am. Dec. 654, we find:

" 'The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, *sic utere tuo ut alienum non laedas*, expressed the well established doctrine of the law.' "

We still adhere to that view. *Southern Railway Co.* v. *McMenamin*, *supra*, 113 Va.; *Panther Coal Co.* v. *Looney*, *supra*, 185 Va.

The court erred in giving Instructions numbered 4, 5, 7, 8 and 9 for the reasons stated. It becomes unnecessary to discuss the remaining assignments of error, in view of our conclusion. It was for the jury to determine, under proper instructions, whether plaintiff's property was materially injured by smoke, dust, and other harmful substances contributed in whole or part by the defendant, and, if so, what part of the damage was attributable to the defendant.

For the reasons stated, the judgment complained of is reversed; the verdict of the jury set aside; and the case remanded for a new trial in accordance with the views herein expressed.

*Reversed and remanded.*