# Richmond

## Sam Finley, Inc. v. Carrie C. Waddell, Et Al.

November 28, 1966.

Record No. 6298.

Present, All the Justices.

*R. William Arthur* (*W. P. Parsons,* on brief), for the plaintiff in error.

No brief or argument for the defendants in error.

CARRICO, J., delivered the opinion of the court.

Carrie C. Waddell, Greek F. Vaught and Eleanor W. Vaught, the plaintiffs, brought this action against Sam Finley, Inc., and Holston River Quarry, Inc., the defendants, seeking to recover damages allegedly caused to the plaintiffs' farm by "smoke, soot, dust, dirt, limestone, oil and other waste substances" emitted from a quarry and rock crushing plant operated by Holston and a bituminous concrete plant operated by Finley. The plaintiffs alleged that the damages were caused by nuisances created and maintained by the defendants.

The defendants filed demurrers which were overruled by the trial court. They also filed grounds of defense denying the commission of the acts complained of by the plaintiffs.

A jury trial resulted in a verdict in favor of the plaintiffs in the sum of $9,500, which verdict was approved by the trial court. The judgment has become final as to Holston. Finley is here on a writ of error.

The evidence shows that Finley, as prime contractor, had contracts with the Virginia Department of Highways for the paving of a portion of Interstate Highway No. 81 in Wythe County. Finley in turn entered into a contract with Holston whereby the latter agreed to supply crushed rock and other materials needed by Finley in the performance of its contracts with the Highway Department.

Holston leased a tract of land a short distance from the plaintiffs' farm and, in May of 1964, commenced its quarry and rock crushing operations. Finley, pursuant to an arrangement with Holston, erected a bituminous concrete plant on the same leased land and, in June of 1964, commenced the manufacture of bituminous concrete, using the crushed rock supplied by Holston.

The plants operated by the defendants emitted "clouds of smoke, dust and dirt" which settled on the plaintiffs' farm. The pastures were "completely covered by this dust and dirt" which contained

"some kind of film or grease" and "because of this . . . the cows were unable to graze. . . . Cattle won't pasture any land that is not halfway decent clean." The pasturage was rendered "almost useless as far as any food value . . . is concerned."

A pond used for watering the cattle "was completely covered up" and was "contaminated to the extent that there was a white scum over the water" so that the cattle did not "get sufficient amount of water that they ought to have." In addition, thirty-four acres of corn "was affected by the dust."

When the defendants' plants were placed in operation, the plaintiffs immediately "began to notice an appreciable decrease in milk" production. The curtailed production continued until after the plants ceased operating in November of 1964. Because of the lack of pasturage, the plaintiffs were required to feed the cows additional hay and grain in an effort to increase the production of milk.

The buildings on the farm "were completely covered" with "dirt and filth" and had to be repainted. The inside of the house "was covered in dust everyday." It was "almost impossible during the day to stay outside of the house . . . and enjoy it."

Finley first contends that, since it had contracted with the Commonwealth for the performance of a public work, it was "entitled to share the immunity of the Commonwealth from liability for incidental injuries necessarily involved in the performance of the contract where it is not guilty of negligence." Finley then says that since the plaintiffs neither alleged nor proved any negligence on its part, it could not be held liable to the plaintiffs.

The trial court held that Finley was not entitled to immunity from the plaintiffs' claim and that the plaintiffs were not required to allege or prove negligence on the defendants' part. The case was submitted to the jury on the theory that if the defendants, in the operation of their plants, maintained nuisances "to the detriment of the reasonable use and enjoyment" of the plaintiffs' property, "then the plaintiffs are entitled to recover."

In its insistence that it is entitled to be held immune from liability, Finley relies upon two cases previously decided by this court. In the first, *Tidewater Constr. Corp.* v. *Manly*, 194 Va. 836, 75 S. E. 2d 500, the Elizabeth River Tunnel District and Commission had been empowered by the legislature to purchase or condemn property for the construction of a tunnel between the cities of Norfolk and Portsmouth. The construction corporation was engaged by the Commis-

sion to construct a link of the tunnel under the south branch of the Elizabeth River. In the course of construction, it was necessary to employ a dewatering system to keep the tunnel cut dry so that the concrete work might be effected according to specifications.

The plaintiffs alleged that the use of the dewatering system had removed the subjacent support of their building, located 450 feet from the tunnel operation, thus causing it to settle and resulting in the cracking of the walls and floors. The plaintiffs conceded that the construction corporation was guilty of no negligence, but contended that they were not required to prove negligence and had only to prove damages resulting from the construction work in order to recover.

This court held the construction corporation to be immune from the plaintiffs' claim, stating:

> " . . . A contractor or agent lawfully acting on behalf of a principal to whom the right of eminent domain has been accorded, in making a proposed public improvement, cannot be held personally liable for damages if such improvement is made without negligence on his part. . . ." 194 Va., at p. 840.

In the second case, *Green & Company* v. *Thomas*, 205 Va. 903, 140 S. E. 2d 635, 9 A.L.R. 3d 376, the defendant, Green, was engaged in the performance of a contract with the Department of Highways for the construction of Interstate Highway No. 81. In performing the work, Green was required by the plans and specifications to make a deep cut through an elevation of rock 900 feet long on property owned by the Commonwealth.

The plaintiffs alleged that their home, located several hundred feet away from the cut, was damaged by the blasting operations of the defendant. The jury was instructed that the plaintiffs were entitled to recover if their damages were caused by the blasting, irrespective of negligence on the part of the defendant.

Quoting from 43 Am. Jur., Public Works and Contractors § 83, at pp. 827, 828, Mr. Justice I'Anson wrote:

> " 'As a general rule, a private contractor in the construction of a public improvement under a contract with duly authorized authorities is not liable for any injury, direct or consequential, to owners of private property that may result as a necessary incident from the prosecution of the work in a proper manner, which

would otherwise amount to a nuisance. . . .' " 205 Va., at pp. 905, 906.

A judgment in favor of the plaintiffs was reversed. We held that since the defendant was performing a contract for the construction of a highway in a lawful manner on behalf of the Highway Department, it "could not be held personally liable for consequential damages caused to the plaintiffs' home by vibrations and concussions in the absence of proof that the blasting was negligently performed." 205 Va., at pp. 906, 907.

There are significant and controlling distinctions, however, between the two cases just discussed and the one now before us. In those cases, the acts of the contractors which allegedly caused injury to the nearby property were specifically required to be performed by the contracts with the public agencies; they were essential to the execution of the public work being undertaken; and they were performed on the actual job site covered by the contract.

By no stretch of the evidence in this case can it be said that Finley's operation of the bituminous concrete plant was required by, or essential to, the performance of its contracts with the Highway Department. The Department was in no way concerned with how Finley acquired the asphalt to do the paving work. As long as the materials measured up to the required specifications, it was simply beside the point whether Finley manufactured the asphalt or purchased it from some supplier.

Finley did not operate its plant on the job site contemplated by its contracts with the Highway Department. Nor can it be suggested that Finley was required to operate the plant where it did. Admittedly, it was operated in a convenient location, one accessible to both the crushed rock supplied by Holston and the roadbed upon which the asphalt was to be laid. But convenience does not amount to necessity. So far as its obligations to the Highway Department were concerned, Finley could just as well have located the plant where it would have caused no damage.

The injuries to the plaintiffs' property were not "necessarily involved" in the performance of the public work undertaken by Finley, but resulted instead from activities conducted by Finley, while acting in a private capacity and for its own convenience. Finley was not entitled, therefore, to be held exempt from liability to the plaintiffs if its operation of the asphalt plant constituted a nuisance and

caused damages to the plaintiffs. 27 Am. Jur., Independent Contractors, § 53, p. 532; Annotation, 69 A.L.R. 489, at pp. 491, 492. And this is true whether or not negligence was involved in the creation and maintenance of the nuisance. *G. L. Webster Co.* v. *Steelman,* 172 Va. 342, 357, 1 S. E. 2d 305; *Southern Railway Co.* v. *McMenamin,* 113 Va. 121, 128, 73 S. E. 980.

■ Finley's next contention is that if it "be wrong" in its position that it was "entitled to share the immunity of the Commonwealth . . . then it certainly was entitled to have the verdict set aside and a new trial ordered on the ground that the verdict was contrary to the law and the evidence and without evidence to support it."

In this connection, Finley first argues that "its acts caused little, if any, damage to plaintiffs' land" and that it was error, therefore, for the trial court to refuse to set aside the verdict.

This argument takes only a partial view of the evidence. It is true that Finley's evidence indicated that its contribution to the plaintiffs' damages may have been slight. However, other substantial evidence in the case showed otherwise.

The conclusion is inescapable that an "oily substance" which settled upon the plaintiffs' property was emitted from Finley's asphalt plant. And there was evidence that although there was dust emitted from Holston's quarry and rock crushing plant, which commenced operations first, it was "nothing in proportion to what there was with the asphalt plant." In addition, it was shown that it was not until the plants of Finley and Holston were both operating, "that is the two together," that the plaintiffs first noticed "an appreciable decrease in milk" production.

These circumstances justify the jury's finding that Finley materially contributed to the injuries to the plaintiffs' property. The trial court did not err in refusing to set the verdict aside on the assigned ground.

■ Finley's next argument is that the verdict should have been set aside because there was "no showing of how much damage, if any, each defendant had caused the plaintiffs."

This argument is well taken. The trial court, from the outset of the case, ruled that the plaintiffs were not required to show what part of their damages was caused by Finley and what part was caused by Holston. It is clear, from the rulings of the court, that it was of opinion that both defendants would be liable to the plaintiffs for their full damages if the defendants maintained nuisances which

contributed in some degree to cause the damages. Consequently, the plaintiffs were not required to produce evidence apportioning the damages with respect to each defendant. Nor was the jury instructed to separate its award.

The trial court was in error in its opinion. The correct rules are set forth in *Pulaski Coal Co.* v. *Gibboney Co.*, 110 Va. 444, 448, 449, 66 S. E. 73, where it is stated:

" . . . No one can be required to answer in damages for the wrong of another, with whom he was not in privity or concert, and whose action he could not control. This case comes within the purview of the line of authorities dealing with pollution of streams, the pollution causing damage to health or property, and though there is seeming lack of harmony in the authorities, the unmistakable weight thereof is that where there are several concurrent negligent causes, the effects of which are separable, due to independent authors, neither being sufficient to produce the entire loss, then each of the several parties concerned is liable only for the injuries due to his negligence.

"These principles are stated and the distinctions drawn in 21 Am. & Eng. Ency. L., pp. 496-7, 719, citing a number of decided cases. On the last-named page, where the liability of a person contributing to a nuisance along with others is dealt with, it is said: 'But if he acts independently, and not in concert with others, he is liable for damages which result from his own act only. . . .' "

\*\*\*

" ' . . . [T]he liability of joint contributors is not necessarily that of joint tort feasors. If persons who maintain a nuisance act independently, and not in concert with others, each is liable for damages which result from his individual conduct only. And the fact that it may be difficult to actually measure the damages caused by the wrongful act of each contributor to the aggregate result does not affect the rule, or make any one liable for the acts of others.' . . ."

See also *Panther Coal Co.* v. *Looney*, 185 Va. 758, 770, 771, 40 S. E. 2d 298.

The evidence was insufficient to show that the acts of Finley alone would have caused the plaintiffs' whole loss. The inquiry then becomes: Was there sufficient evidence to show that Finley and Hol-

ston were in privity or acting in concert *and* that one could control the actions of the other so that one would be liable for damages for a nuisance maintained by the other?

Whatever privity existed between Finley and Holston, it was not such as to bring them under the rule that one cannot relieve himself of liability by engaging an independent contractor to perform work which, in the course of performance, necessarily creates a nuisance. See *Epperson* v. *DeJarnette*, 164 Va. 482, 487, 180 S. E. 412. Holston's undertaking was merely to furnish crushed rock and other materials to Finley—an activity which, in and of itself, would ordinarily create no nuisance. There is nothing in the contract between Finley and Holston or in the evidence to show that, at the time the parties contracted, there was contemplated the operation of a quarry and rock crushing plant by Holston. So far as the record reveals, Holston could have purchased the materials from any source it desired and re-sold them to Finley, or it could have operated its plant where it would not have created a nuisance.

The only evidence of concert of action was that Finley erected its plant on land originally leased by Holston. And upon the all-important point of control, the only evidence was that the contract between Finley and Holston required the latter to retain E. David Graham, its then present manager, "as Manager for [Holston] during the construction of the entire project." In all other respects, Finley and Holston occupied the usual status of separate, independent contracting parties.

The contract between Finley and Holston itself negated any idea of control of one firm by the other. The contract required Holston to furnish a bond to insure its meeting the required schedules and specifications. If Finley in fact controlled the actions of Holston, or vice versa, then the requirement of a performance bond would seem strangely out of place in such a joint status.

We hold the evidence insufficient to warrant the conclusion that the relationship of Finley and Holston was such as to render one liable for a nuisance maintained by the other. Since they were acting independently, the plaintiffs should have been required to show what portion of their damages was caused by each defendant, and the jury should have been instructed to determine what share of the award each defendant should bear.

In *Smith* v. *The Pittston Company*, 203 Va. 711, 127 S. E. 2d 79,

Mr. Justice Spratley, writing for the court in a situation strikingly similar to the one before us, stated:

> "It is true that where damages are occasioned by a combination of causes originating from different sources, it is for the jury to determine from the evidence what part is attributable to a defendant and what part to other persons or other causes. The burden is on a plaintiff to produce evidence which will show 'within a reasonable degree of certainty' the share of the defendant therein. *Panther Coal Co.* v. *Looney*, 185 Va. 758, 772, 40 S. E. 2d 298; *Heldt* v. *Tunnel District*, 196 Va. 477, 484, 84 S. E. 2d 511." 203 Va., at p. 715.
>
> ***
>
> " . . . It was for the jury to determine, under proper instructions, whether plaintiff's property was materially injured by smoke, dust, and other harmful substances contributed in whole or part by the defendant, and, if so, what part of the damage was attributable to the defendant." 203 Va., at p. 718.

The situation in this case differs from that in the *Maroulis* cases, Record Nos. 6243, 6244, 6245, 6246 and 6247, this day decided. In those cases, the negligent acts of two joint tort feasors combined and concurred to produce, and were the direct and proximate cause of, the total loss, that is, the personal injuries and deaths there involved. Although it was impossible to determine in what proportion each tort feasor contributed to the loss, it is probable that the negligent act of either would have resulted in substantial, if not the entire, injury. Consequently, both tort feasors were held liable.

Here, we are concerned with injury to property caused by nuisances maintained by the defendants, who were not acting in concert, the independent act of each being insufficient to cause the whole loss. As was noted in *Pulaski Coal Co.* v. *Gibboney Co.*, *supra*, the liability of joint contributors in nuisance cases is not always the same as that of joint tort feasors in negligence cases.

The torts of nuisance and negligence are distinct and differ in their nature and consequences. And the rules which have been formulated by the courts for determining joint liability for nuisance are not the same as those applicable to negligence.

Joint liability for negligence may be imposed even though there is no concert of action between the joint tort feasors and even

though it is impossible to determine in what proportion each contributed to the injury. But in nuisance cases, joint liability depends upon whether there is concert of action between the joint contributors. If they act independently, and not in concert, the injured party must apportion his damages between the contributors, unless the independent act of the one sought to be held is sufficient to cause the whole loss.

We conclude that, insofar as Finley is affected thereby, the judgment of the trial court must be reversed and the verdict of the jury set aside. The case will be remanded for a new trial, as to the liability of Finley, in accordance with the views expressed in this opinion. Having reached this conclusion, it is unnecessary to discuss the other questions raised by Finley.

*Reversed and remanded.*