HERBERT L. CLARK AND WIFE, BOBBIE C. CLARK v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

WALTER RULE AND WIFE, NANCY RULE v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

WILLIAM B. PFEIFFER AND WIFE, LEIGH PFEIFFER v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

HERBERT F. MOORE AND WIFE, LORETTA MOORE v. ASHEVILLE CON-
TRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H.
TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION

HARRY GOLDEN AND WIFE, RUTH GOLDEN v. ASHEVILLE CONTRACTING
COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR
AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPOR-
TATION

TANIA ROLLMAN v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH
CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH
CAROLINA DEPARTMENT OF TRANSPORTATION

ARTHUR E. JACOBSON, SENIOR WARDEN, ST. LUKE'S EPISCOPAL CHURCH,
DAN WALL, JUNIOR WARDEN, ST. LUKE'S EPISCOPAL CHURCH v. ASHE-
VILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION,
BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPART-
MENT OF TRANSPORTATION

CHARLES CROCKER AND WIFE, MAE CROCKER v. ASHEVILLE CONTRACT-
ING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H.
TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION

ANGELO G. DOTSIKAS AND WIFE, CATHERINE M. DOTSIKAS v. ASHEVILLE
CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAX-
TER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPART-
MENT OF TRANSPORTATION

ALLEN WALTON YOUNG AND WIFE, BIRGIT YOUNG v. ASHEVILLE CON-
TRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H.
TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION

WINSTON C. LITTLE AND WIFE, LINDA B. LITTLE v. ASHEVILLE CON-
TRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H.
TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION

EDSEL RITTER AND WIFE, NORMA RITTER v. ASHEVILLE CONTRACTING
COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR
AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPOR-
TATION

EUGENE C. SANFORD AND WIFE, PATRICIA G. SANFORD v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

J. ROBERT HUFSTADER AND WIFE, JEAN HUFSTADER v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

WILLIAM L. SUTTON AND WIFE, BETTY A. SUTTON v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

KENNETH W. BROWNELL, JR. AND WIFE, MARGARET SLACK BROWNELL v. ASHEVILLE CONTRACTING COMPANY, INC. A NORTH CAROLINA CORPORATION, BAXTER H. TAYLOR AND THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

No. 73PA85

(Filed 6 May 1986)

1. **Appeal and Error § 6.2— mandatory injunction—immediately appealable due to no delay finding**

   In an action arising from the disposal of rock waste on private property in a highway construction project, the matters addressed and adjudicated in the summary judgment entered by the trial court were properly before the Court of Appeals for appellate review where the trial court made a finding of no just reason for delay even though the summary judgment did not address or dispose of cross-claims for indemnity among the defendants or a claim in trespass against defendants. N.C.G.S. 1A-1, Rule 54(b).

2. **Highways and Cartways § 7.2— highway construction—disposal of rock waste —DOT not liable**

   The trial court erred in an action arising from the disposal of rock waste from a highway construction project by failing to enter summary judgment in favor of DOT where the acts complained of could not be viewed as a taking for a public use because the provisions in the contract between the company and DOT clearly showed that the disposal of rock waste from the highway project on the property chosen by the company was not required by the State and was solely for the convenience of the company. N.C. App. Rule 28(b).

3. **Highways and Cartways § 7.2— highway contract—disposal of rock waste on private property—no contract or immunity—summary judgment improper**

   In an action arising from the disposal of rock waste from a highway construction project, the contractor immunity rule of *Moore v. Clark*, 235 N.C.

364, did not apply because the acts complained of did not constitute a taking for public use; however, summary judgments against the contractor and its president were reversed where there were genuine issues of material fact.

ON discretionary review of the decision of the Court of Appeals, 72 N.C. App. 143, 323 S.E. 2d 765 (1984), reversing judgment by *Lewis, J.*, filed 1 January 1983 in Superior Court, BUNCOMBE County. Heard in the Supreme Court 16 October 1985.

*Long, Howell, Parker & Payne, P.A., by Ronald W. Howell, for the plaintiff appellees.*

*Lacy H. Thornburg, Attorney General, by James B. Richmond, Special Deputy Attorney General, and Alfred N. Salley, Assistant Attorney General, for the defendant appellant The North Carolina Department of Transportation.*

*Adams, Hendon, Carson & Crow, P.A., by George Ward Hendon, for the defendant appellees Asheville Contracting Company, Inc. and Baxter H. Taylor.*

MITCHELL, Justice.

The questions presented for discretionary review arise from sixteen separate civil actions, consolidated for purposes of trial and appeal, brought by property owners in the City of Asheville as a result of the disposal of waste materials from the Beaucatcher Mountain Highway Project. The defendants are the Department of Transportation [hereinafter "DOT"], Asheville Contracting Company, Inc. [hereinafter "Company"] and its president, Baxter H. Taylor. The plaintiffs are owners of real property in Mountainbrook, a subdivision in Asheville.

The plaintiffs brought actions against all of the defendants by the filing of complaints alleging that the plaintiffs' property was damaged by the action of the defendants in placing rock waste materials on property adjacent to or near the property of the plaintiffs. At least four claims were common to all of the complaints. Each complaint alleged that: (1) the defendants created a nuisance; (2) the defendants placed rock waste on property owned by Taylor in Mountainbrook Subdivision in violation of a restrictive covenant; (3) the placing of the rock waste materials by the defendants violated a zoning ordinance of the City of Asheville;

and (4) the defendant DOT had authorized the Company to place rock waste from the highway project in such places and manner as to result in the taking of a compensable interest in the plaintiffs' property by DOT. Some of the plaintiffs also asserted a fifth claim for relief against Taylor and the Company by alleging that rock waste from the project placed on property of those defendants diverted the natural flow of water and caused water to flow on the plaintiffs' property to their damage. Additionally, some of the plaintiffs asserted a sixth claim for relief against Taylor and the Company by alleging that they had entered those plaintiffs' property without permission and cut trees and dumped waste rock thereon. The plaintiffs' prayer for relief against Taylor and the Company sought both a mandatory injunction and pecuniary damages. The plaintiffs prayed in the alternative that DOT be required to compensate them for the taking of an interest in their property.

DOT filed answers to the complaints denying most of the essential allegations of the plaintiffs. In its answer DOT also moved to dismiss the claims against it for failure to state a claim upon which relief can be granted and cross-claimed against the Company, praying for indemnification in the event DOT should be found liable. The Company and Taylor filed answers to the complaints admitting certain allegations and denying others. In their answers they also moved to dismiss the actions against them for failure to state a claim upon which relief can be granted and cross-claimed against DOT for indemnification in the event they should be found liable.

The plaintiffs' cases against the defendants were brought before the trial court for a hearing for the first time on 16 November 1981. A second hearing was held on 11 December 1981. During the course of these hearings, the trial court received testimony by witnesses for the plaintiffs and the defendants. Written stipulations of the parties and numerous documents and attachments, including the contract between DOT and the Company for disposal of the rock waste from the project, the restrictive covenants for Mountainbrook Subdivision and ordinances of the City of Asheville were also received in evidence.

The evidence introduced during the hearings tended to show *inter alia* that DOT, an agency of the State, was required to make

a large cut through Beaucatcher Mountain in the process of building a highway there. This required the removal of more than 2,000,000 cubic yards of excess or waste material composed primarily of granite and disposal of the material off the project site. As a result of competitive bidding procedures, the defendant Company was awarded a contract on 1 December 1976 to remove the excess or waste material. A special provision was included in the contract which contained the following:

"DISPOSAL OF WASTE AND DEBRIS:

The 1972 Standard Specifications shall be revised as follows:

Pages 382 and 383, Section 802. Delete this section in its entirety and replace with the following:

DESCRIPTION

The work covered by this section consists of the disposal of waste and debris in accordance with the requirements of these provisions. Waste will be considered to be all excavated materials which are not utilized in the construction of the project. Debris will be considered to be all undesirable material encountered on the project other than waste or vegetative material resulting from clearing and grubbing operations.

GENERAL REQUIREMENTS

*Waste and debris shall be disposed of in areas* that are outside of the right of way and *provided by the Contractor*, unless otherwise required by the plans or special provisions or unless disposal within the right of way is permitted by the Engineer.

The Contractor shall maintain the earth surfaces of all waste areas, both during the work and until the completion of all seeding and mulching or other erosion control measures specified, in a manner which will effectively control erosion and siltation."

(Emphasis added.) The special provision also set forth lengthy requirements establishing the maximum angle for slopes created by disposal of the waste, requirements for covering the waste with earth and seeding and mulching. The special provision gave DOT

authority to refuse to approve the disposal if it would result in excessive siltation, pollution or instability to the existing ground.

The Company bought land and acquired an easement adjoining the Mountainbrook Subdivision. Taylor, the president of the Company, bought two lots in Mountainbrook Subdivision. Waste material from the project, composed primarily of granite in sizes ranging from large "boulders" to fine particles, was placed on the Company property adjoining the subdivision and on the lots owned by Taylor in the subdivision. The waste material was then covered with a layer of earth.

The plaintiffs' evidence tended to support their view that the placing of the waste material from the project on the Company property adjoining the subdivision and on the Taylor lots in the subdivision "considerably raised the level of the land immediately adjoining their properties, blocking view, creating water drainage problems and in general, totalling [sic] changing the character of the neighborhood from a quiet residential area to that of a commercial waste site." There also was evidence that removal of the waste from the property adjoining the subdivision and the lots owned by Taylor in the subdivision would require the removal of from 1,300,000 to 1,500,000 cubic yards of waste material and would take nine years at a cost of $13,500,000.00.

Restrictive covenants for the subdivision provided that all lots in the subdivision will be used for residential purposes and included a specific covenant that: "No trade or business and no noxious or offensive activities shall be carried on upon any lot or tract, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood." The covenants also specifically provided that no lot in the subdivision "shall be used or maintained as a dumping ground for rubbish, trash, garbage or other waste . . . ."

The evidence also tended to show that at all pertinent times, some or all of the areas where the waste material from the highway project was placed were within an area zoned as a R-2 Low Density Residential District. Under Ordinance No. 322, as amended, "AN ORDINANCE PROVIDING FOR THE ZONING OF THE CITY OF ASHEVILLE," § 30-5-3 A, land in such districts "shall be used only for the following uses: Residences, neighborhood playgrounds, home occupations, golf courses, community centers, public facili-

Clark v. Asheville Contracting Co., Inc.

ties accessory buildings, condominiums, and greenhouses, used as an accessory building to the primary residence."

An erosion control ordinance of the City of Asheville, Ordinance No. 813, as revised by Ordinances No. 846 and No. 986 of City of Asheville, also applied at all pertinent times to all private and public property within the jurisdiction of the City of Asheville. That ordinance by its terms sought to prevent accelerated erosion and sedimentation and any hazards to the public health, safety, or welfare or potential damage to any private or public property. To this end it directed those engaged in any form of land disturbing activities to comply with lengthy and detailed requirements to prevent such unwanted consequences.

At the end of the 11 December 1981 hearing the trial court denied the defendants' motions to dismiss and for summary judgment. The record on appeal also reflects that: "At this point the Court asked the plaintiffs if they desired to elect to pursue an equitable remedy of removal of the rock from the waste areas and lots *or* to pursue the remedy of damages. The plaintiffs elected to pursue an equitable remedy." (Emphasis added.) The trial court then granted a continuance to allow the defendants to prepare and present evidence as a result of the election by the plaintiffs.

The record on appeal also reflects the following:

THE COURT: Let the record show that at a previous hearing unreported no additional evidence was offered, but arguments were made to the Court and that during that argument the landowners through their counsel of record, pursuant to a direct request from the Court, elected to pursue an equitable remedy in which the landowners request the Court to order that the Department of Transportation and the contractor remove the waste previously deposited on the property in question. This election *was opposed to* a possible claim for relief in damages.

(Emphasis added.) The record on appeal does not reflect when the unreported hearing referred to by the trial court was held, but apparently it was held after the 11 December 1981 reported hearing and before the 16 December 1982 reported hearing.

On 7 July 1982, the trial court entered an order denying all of the defendants' motions for summary judgment. On 12 October

1982, the plaintiffs filed motions for summary judgment in their favor as to all defendants.

The last reported hearing was held before the trial court on 16 December 1982. Before the presentation of any evidence at that hearing, DOT moved to dismiss all claims of all of the plaintiffs against it "based on the State's Sovereign Immunity as a result of the plaintiffs' election to pursue an equitable remedy and as a result of their pursuit of a remedy not provided by Statute." The trial court denied that motion. DOT then moved under Rule 12(b)(6) for dismissal of all claims against it by all plaintiffs for failure to state a claim upon which relief can be granted. That motion also was denied.

In its judgment filed 3 January 1983, the trial court found that there was no genuine issue as to any material fact and concluded that "the acts of the defendants were not and are not for a proper public purpose, and that plaintiffs are entitled to Judgment against the defendants . . . ." The trial court further found and concluded "that the plaintiffs will suffer irreparable harm for which they have no adequate remedy at law unless the nonconforming use of the property . . . is eliminated, and said plaintiffs . . . elected to pursue in the alternative an equitable remedy to eliminate such nonconforming use of the said waste areas . . . ." The trial court granted summary judgment in favor of each of the plaintiffs against the defendants and ordered the defendants to "cease and desist, and eliminate the nonconforming use of [all property which had been used as waste areas] . . . and that defendants remove all waste rock material placed on the property . . . within a reasonable time to be established by further orders of the Court." The judgment also recites that "final Judgment is entered as to fewer than all the claims presented in this action as the Court hereby determines that there is no just reason for delay of the entry of this final judgment." All of the defendants excepted to the judgment and gave notice of appeal to the Court of Appeals.

The Court of Appeals held that the trial court erred by failing to dismiss all claims against the Company, except the claims in trespass by some of the plaintiffs alleging that the defendants entered their property and cut trees and dumped rock without permission. As to those claims in trespass, the Court of Appeals

held that the trial court properly denied the Company's motions to dismiss and for summary judgment. The Court of Appeals also held that the trial court properly denied Taylor's motion to dismiss. It held that the trial court erred by allowing the motions for summary judgment against DOT. It reversed the summary judgment entered by the trial court against all of the defendants and remanded the cases to the Superior Court, Buncombe County. DOT filed a petition for discretionary review which was allowed by this Court on 7 May 1985.

[1] At the outset we take notice of the statement in the opinion of the Court of Appeals that:

> [W]hen the court entered a mandatory injunction requiring the defendants to remove the waste, this concluded the lawsuit. Although the judgment did not award the plaintiffs any damages in accordance with some of their claims, it was a final judgment for which there is the right to an immediate appeal regardless of whether the superior court made a determination that there is no just reason for delay.

72 N.C. App. at 147-48, 323 S.E. 2d at 768. If this statement was intended only to indicate that the summary judgment was a complete adjudication of the claims it addressed, the statement was correct. The summary judgment of the trial court did not, however, address or dispose of the various cross-claims for indemnity among the defendants or the plaintiffs' claims in trespass against the defendants for entering the plaintiffs' property and cutting trees and dumping rocks thereon. Therefore, it was not an adjudication of all the claims of all of the parties. The trial court having made a determination of "no just reason for delay," however, the matters addressed and adjudicated in the summary judgment entered by the trial court were properly before the Court of Appeals for appellate review. N.C.G.S. § 1A-1, Rule 54(b).

[2] Turning to the assignments and contentions of the parties on appeal, we first address the contention of the defendant DOT that the trial court's conclusion that the acts of the defendants were "not for a proper public purpose" compelled entry of summary judgment in favor of DOT as to all claims against it by all plaintiffs. We find merit in this contention.

DOT argues that the trial court's conclusion that the acts of the defendants were not for a public purpose is supported and in fact compelled by the terms of the contract between DOT and the Company. DOT argues that the contract did not require that the waste rock from the highway project be placed at the site chosen by the Company but specifically stated that areas for disposal of that waste be provided by the Company, subject only to the requirement that the waste be placed on the site ultimately chosen in an environmentally sound manner. DOT argues that these provisions in the contract clearly show that the disposal of waste rock from the highway project on the property chosen by the Company was not required by the State and was solely for the convenience of the Company and, therefore, was not for a public purpose. *See generally, e.g., Converse v. Refining Corp.*, 281 F. 981 (4th Cir. 1922); *Sam Finley, Inc. v. Waddell*, 207 Va. 602, 151 S.E. 2d 347 (1966); *Kochtitzky v. Bond*, 128 Ark. 255, 194 S.W. 8 (1917); *Bates v. Holbrook*, 171 N.Y. 460, 64 N.E. 181 (1902). It is unnecessary for us to address or decide the issues raised by this argument, however, and we do not do so here.

In their briefs and oral arguments before this Court, no party has challenged the trial court's conclusion that the acts of the defendants in disposing of the waste materials from the project were not for a public purpose. Our review on appeal "is limited to questions so presented in the several briefs." N.C. App. R. 28(a). Therefore, the parties are deemed to have abandoned any right to assign error to that conclusion. *Id.*

This Court has previously pointed out that: "It is clear that private property can be taken by exercise of the power of eminent domain only where the taking is for a public use." *Highway Commission v. Thornton*, 271 N.C. 227, 241, 156 S.E. 2d 248, 259 (1967). As the acts the plaintiffs complain of were not for a public purpose, they were beyond the authority of DOT to take property for public use in the exercise of its statutory power of eminent domain. *See generally* N.C.G.S., ch. 136, art. 2. Since DOT as a matter of law is incapable of exceeding its authority, the acts complained of could not be a condemnation and taking of property *by DOT* or an actionable tort *by DOT*. At most, the acts complained of could have been unauthorized trespasses by agents of DOT, for which no actionable claim exists against DOT. *Thornton*, 271 N.C. at 236, 156 S.E. 2d 255; *Highway Commission v. Batts*,

265 N.C. 346, 361, 144 S.E. 2d 126, 137 (1965). DOT, like the State Highway & Public Works Commission which preceded it,

> is an inanimate, artificial creature of statute. Its form, shape and authority are defined by the Act by which it was created. It is as powerless to exceed its authority as is a robot to act beyond the limitations imposed by its own mechanism. It can commit no actionable wrong. Hence the owner of property cannot maintain an action against it in tort for damages to property. . . . It follows, as of course, he cannot maintain an action against it to restrain the commission of a tort. As against the defendant, his remedy is that, and that only, provided by statute—a proceeding in condemnation for the assessment of compensation for property *taken for public use.*

*Schloss v. Highway Commission*, 230 N.C. 489, 492, 53 S.E. 2d 517, 519 (1949) (emphasis added) (citation omitted). More recently, this Court stated that:

> The owner of property cannot maintain an action against the State or any agency of the State in tort for damages to property (except as provided by statute, G.S., Ch. 143, Art. 31). It follows that he cannot maintain an action against it to restrain the commission of a tort. However, the landowner is not without a remedy. When public officers whose duty it is to supervise and direct a State agency attempt or threaten to invade the property rights of a citizen in disregard of law, they are not relieved of responsibility by the immunity of the State from suit, even though they act or assume to act under the authority and pursuant to the directions of the State.

*Shingleton v. State*, 260 N.C. 451, 458, 133 S.E. 2d 183, 188 (1963). Likewise, private parties would not be relieved of responsibility when they assumed to act under such authority.

As previously discussed herein, the acts of the defendants forming the basis of the claims by the plaintiffs and the cross-claims by the other defendants against DOT must be viewed as not having been a taking for a public use. Therefore, neither the plaintiffs nor the other defendants could maintain an action against DOT arising from those acts. The trial court erred by fail-

ing to enter summary judgment in favor of DOT as to all claims against it by all plaintiffs and by the other defendants.

[3] The remaining defendants contend that the trial court also erred in granting summary judgment against them. With regard to Taylor, the Court of Appeals held that there were genuine issues as to material facts and reversed the summary judgment against him. We agree.

The Court of Appeals held that the trial court erred by failing to dismiss all claims against the Company, except the claims in some of the complaints that the Company entered certain plaintiffs' property and cut trees and dumped rock without permission. For its holding in this regard, the Court of Appeals referred to the rule set forth in *Moore v. Clark*, 235 N.C. 364, 367-68, 70 S.E. 2d 182, 185 (1952) that:

> A contractor who is employed by the State Highway and Public Works Commission to do work incidental to the construction or maintenance of a public highway and who performs such work with proper care and skill cannot be held liable to an owner for damages resulting to property from the performance of the work. The injury to the property in such a case constitutes a *taking* of the property *for public use* for highway purposes, and the only remedy available to the owner is a special proceeding against the State Highway and Public Works Commission under G.S. 136-19 to recover compensation for the property taken or damaged.

(Emphasis added.) Relying upon *Moore*, the Court of Appeals held that whatever claims the plaintiffs might have, other than the claims in the nature of trespass, were "against the Department of Transportation for the diminution of their property values." 72 N.C. App. at 148, 323 S.E. 2d at 769. As the acts complained of in the present case were not a taking for public use, however, the borrowed immunity rule of *Moore* has no applicability, and the Court of Appeals' reliance was misplaced. The Company was not entitled to dismissal.

We hold, however, that the trial court's summary judgment against the Company and Taylor must be reversed. The trial court's findings of fact and conclusions of law are insufficient to enable us to determine with certainty on appellate review which

of the plaintiffs' claims against these two defendants the trial court felt to have merit and which of them, if any, were without merit. It suffices to say that as to all or most of the claims there is conflicting evidence and that there are genuine issues as to material facts arising therefrom. In fairness to the trial court, we note that its apparent failure in this regard seems to have arisen from the confusion engendered at the trial level as to whether the acts complained of were to be considered and treated by the parties as the acts of an agency of the State. No such confusion should arise on remand of this case to the trial court, however, since we conclude that the acts complained of were not acts of DOT and that summary judgment must be entered in favor of DOT.

The plaintiffs elected to pursue only the remedy of injunctive relief. As this case must be remanded for further proceedings in the trial court, we find it worthwhile to repeat the cautionary statement of the Court of Appeals that on remand "the court must consider the relative convenience-inconvenience and the comparative injuries to the parties . . . . In this case some findings of fact should be made in this regard before ordering the removal of the material." 72 N.C. App. at 149, 323 S.E. 2d at 769.

The ultimate result reached by the Court of Appeals was to reverse the trial court's entry of judgment as to each of the defendants. Although we hold that the trial court erred in entering summary judgment against any of the defendants and that the ultimate result reached by the Court of Appeals was correct, we do so for different reasons as previously stated herein. The decision of the Court of Appeals reversing summary judgment for the plaintiffs, as modified by this opinion, is affirmed. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Buncombe County, for further proceedings not inconsistent with this opinion.

Modified and affirmed and remanded.