IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-187

No. COA20-304

Filed 4 May 2021

Wake County, No. 15-CVS-5836

TOWN OF APEX, Plaintiff,

v.

BEVERLY L. RUBIN, Defendant.

Appeal by Defendant from orders entered 21 January 2020 by Judge G. Bryan Collins in Wake County Superior Court. Heard in the Court of Appeals 24 February 2021.

*Nexsen Pruet, PLLC, by David P. Ferrell and Norman W. Shearin, for Plaintiff-Appellee.*

*Fox Rothschild LLP, by Matthew Nis Leerberg and Troy D. Shelton, and Howard, Stallings, From, Atkins, Angell & Davis, P.A., by Kenneth C. Haywood and B. Joan Davis, for Defendant-Appellant.*

*Johnston, Allison & Hord, P.A., by Susanne Todd and Maisha M. Blakeney, and Sever Storey, LLP, by Shiloh Daum, for amicus curiae North Carolina Advocates for Justice.*

*John Locke Foundation, by Jonathan D. Guze, amicus curiae.*

INMAN, Judge.

¶ 1        Our Federal and State Constitutions protect us, our homes, and our lands from unrestrained government intrusion. Police cannot roam about our private property

unfettered.  U.S. Const. amend. IV; N.C. Const. art. I § 20.  The military cannot forcibly occupy our homes during peacetime.  U.S. Const. amend. III; N.C. Const. art. I § 31.  And, most pertinent to this appeal, the State cannot take our property without both a public purpose and payment of just compensation.  U.S. Const. amend. V; N.C. Const. art. I § 19.

¶ 2        Plaintiff-Appellee Town of Apex ("the Town") asks this Court to uphold the Town's continuing intrusion onto the land of a private citizen through a circuitous and strained application of North Carolina law on eminent domain and inverse condemnations.  The Town's position, in essence and when taken to its logical conclusion, is as follows: (1) if a municipality occupies and takes a person's private property for no public purpose whatsoever, that private landowner can do nothing to physically recover her land or oust the municipality; (2) if the encroachment decreases the property's value, then the landowner's sole remedy is compensation by inverse condemnation; and (3) in all other instances, a landowner is powerless to recover or otherwise vindicate her constitutional rights.  This is not the law, nor can it be consistent with our Federal and State Constitutions.

¶ 3        Defendant-Appellant Beverly L. Rubin ("Ms. Rubin") appeals from orders denying her motion to enforce a judgment in her favor in a direct condemnation action and granting the Town's motion to be relieved from that judgment.  She asserts that, having successfully recovered title to her land after the Town's unlawful taking, she

is entitled to repossess her property free of a sewer pipe installed by the Town. We agree with Ms. Rubin that mandatory injunctive relief may be available to her, but hold that it is not available in the direct condemnation action that was taken to final judgment without a request for or adjudication concerning the availability of injunctive relief. Instead, she may pursue mandatory injunctive relief against the Town to remedy its continuing encroachment through a claim for trespass.

## I.  FACTUAL AND PROCEDURAL HISTORY

¶ 4        Many of the facts underlying this appeal were summarized in our prior decision, *Town of Apex v. Rubin*, 262 N.C. App. 148, 821 S.E.2d 613 (2018). However, because we now address post-judgment motions that were entered after that decision, a brief recitation of the factual and procedural history is warranted.

*1.  The Direct Condemnation Action and Installation of the Sewer Pipe*

¶ 5        Ms. Rubin owns a tract of land in rural Wake County. In 2012 and 2013, a local real estate developer, Brad Zadell ("Mr. Zadell"), purchased several parcels to the east and west of Ms. Rubin's land with the intention of improving and selling them for residential development. *Rubin*, 262 N.C. App. at 149, 821 S.E.2d at 614. The western tract, known as Arcadia West, received sewer service from the Town, while the eastern tract, Riley's Pond, had no such access. *Id.* Mr. Zadell asked Ms. Rubin if she would grant him an easement to connect Riley's Pond to the Town's sewer service. *Id.* Ms. Rubin declined. *Id.*

¶ 6    Undeterred, Mr. Zadell turned to the Town's utilities director, asking for the Town to take the sewer easement by eminent domain.[1]  *Id.*  In 2015, The Town and Mr. Zadell agreed that: (1) the Town would pursue a direct condemnation action to seize a sewer easement across Ms. Rubin's property; and (2) Mr. Zadell would cover any and all costs incurred by the Town in the exercise of its eminent domain powers. *Id.* at 150, 821 S.E.2d at 615. A few weeks after entering into the agreement, Mr. Zadell contracted to sell Riley's Pond at a $2.5 million profit.  *Id.*

¶ 7    In March 2015, the Town council voted to pursue a direct condemnation action for a sewer line easement across Mr. Rubin's land.  *Id.*  It filed the direct condemnation action the following month and used its statutory "quick-take" powers[2] to obtain immediate title to a 40' easement running across Ms. Rubin's property for the installation and maintenance of sewer lines "above, in, on, over, above, [sic] under, through, and across" the easement area.  Ms. Rubin timely filed an answer contesting the taking as illegal and unconstitutional, but she did not pursue any injunctive relief to restrain the Town from constructing the sewer line.

---

[1] The Town is authorized by its charter to exercise the same eminent domain powers granted to the North Carolina Department of Transportation found in N.C. Gen. Stat. §§ 136-103, *et seq.* (2019).

[2] Quick-take powers grant a condemnor "right to immediate possession" of the condemned property "[u]pon the filing of the complaint and the declaration of taking and deposit in court[.]"  N.C. Gen. Stat. § 136-104.

¶ 8        After Ms. Rubin filed her answer, and while her challenge to the condemnation action was pending, the Town installed a sewer line within the 40' easement.  The trial court later resolved Ms. Rubin's challenge to the condemnation and entered a judgment (the "Judgment") concluding the taking was not for a public purpose, even though the sewer line would serve the Riley's Pond subdivision.  The Judgment declared the Town's "claim to [Ms. Rubin's] property by Eminent Domain . . . null and void" and dismissed the direct condemnation action.  The Judgment was left undisturbed following a lengthy series of post-judgment motions and appeals. *See id.* at 153, 821 S.E.2d at 616-17 (2018), *temp. stay dissolved, disc. rev. denied*, 372 N.C. 107, 825 S.E.2d 253 (2019).

*2. Litigation Following the First Appeal*

¶ 9        After this Court's decision in the prior appeal, Ms. Rubin filed a combined motion and petition for writ of mandamus asking the trial court to compel the Town to remove the sewer line. Ms. Rubin sought this relief under several theories, including: (1) N.C. Gen. Stat. § 136-114 (2019), which gives trial courts in direct condemnation actions "the power to make all the necessary orders and rules of procedure necessary to carry into effect the object and intent of this Chapter[;]" (2) N.C. Gen. Stat. § 1-302 (2019) and Rule 70 of the North Carolina Rules of Civil Procedure, which collectively authorize trial courts to compel a party to comply with a judgment directing the conveyance of land; (3) by writ of mandamus to compel the

Town to perform the act of removing the pipes; and (4) through the trial court's inherent powers to enforce its own orders.[3]

¶ 10    The Town responded to Ms. Rubin's motion in two ways.  First, it filed a motion for relief in the direct condemnation action on the basis that the Judgment voided the action *ab initio*, extinguished the trial court's jurisdiction, and rendered the installation of the sewer line a separate inverse condemnation.  Second, the Town filed a new declaratory judgment lawsuit seeking to declare the sewer pipe installation an easement by inverse condemnation, limit Ms. Rubin's relief to that singular remedy, and enjoin her from removing the sewer line.

¶ 11    The trial court heard motions in the two actions jointly and ruled for the Town in each.  In the direct condemnation action, the trial court denied Ms. Rubin's motion to enforce the Judgment, denied Ms. Rubin's petition for writ of mandamus, and granted the Town's motion for relief from the Judgment.  In the declaratory judgment action, the trial court denied a motion to dismiss filed by Ms. Rubin and entered a

---

[3] Ms. Rubin's motion asserted additional bases for injunctive relief.  We do not address those additional bases because Ms. Rubin has not argued them in her briefs on appeal.  *See* N.C. R. App. P. 28(a) (2021) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

preliminary injunction prohibiting Ms. Rubin from disturbing the sewer line. This

decision addresses only the direct condemnation action.[4]

### 3. *The Order Denying Ms. Rubin Injunctive Relief*

¶ 12    In the first of two orders in the direct condemnation action, the trial court

denied Ms. Rubin's motion for injunctive relief, based in part on the following facts:

> 4. [Ms. Rubin] did not plead any claim for relief entitling
> her to the relief requested in the Motion. [Ms. Rubin] could
> have requested the Court grant her injunctive relief before
> the sewer pipe was installed under her property, but she
> did not do so. [Ms. Rubin] did not request injunctive relief
> from the Court prior to the installation of the sewer line to
> prevent construction . . . and did not request injunctive
> relief to close or remove the sewer pipe at the all other
> issues hearing before the Court.
>
> 5.    Although the sewer pipe had been installed for
> approximately one year prior to the all issues hearing . . .
> the Judgment does not address the actual installation,
> maintenance and use of the sewer pipe under [Ms. Rubin]'s
> property and does not require removal
> . . . .
>
> 11. On or about 27 July 2015 the Town constructed an
> underground sewer line 18 feet under the entire width of a
> narrow portion of Rubin's property.
>
> . . . .
>
> 14. The sewer line was installed prior to the entry of the

---

[4] The declaratory judgment action is discussed in greater detail in *Town of Apex v. Rubin*, No. COA20-305, ___ N.C. App. ___, 2021-NCCOA-___ (filed 4 May 2021), filed contemporaneously with this opinion.

> Judgment, remains in place and in use, and serves approximately fifty (50) residential homes and/or lots in the Riley's Pond Subdivision . . . .

¶ 13    The trial court also made several findings and conclusions of law[5] interpreting the effect of the Judgment:

> 2. The Judgment does not order the town to do any of the acts specified in Rule 70 of the Rules of Civil Procedure.
>
> 3. The Judgment does not require the return or delivery of real property as per N.C. Gen. Stat. § 1-302.

The trial court also entered conclusions of law rejecting Ms. Rubin's arguments for injunctive relief and concluding that the Town had taken an easement by inverse condemnation:

> 1. The Judgment does not afford to [Ms. Rubin] any of the relief which she seeks in the Motion. *State Highway Commission v. Thornton*, 271 N.C. 227, 156 S.E.2d 248 (1967).

---

[5] The parties dispute whether the trial court's interpretation of the Judgment is a question of law or fact. Determinations as to the "legal effect of [an] order" are conclusions of law, which we review *de novo*. *Delozier v. Bird*, 125 N.C. 493, 34 S.E.2d 643, 643 (1899); *see also N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 512, 742 S.E.2d 781, 786 (2013) ("[C]onclusions of law are reviewed de novo." (citation omitted)). To the extent the trial court's particular interpretations require application of legal principles to the facts, they are mixed questions of law and fact. *See, e.g., Brown v. Charlotte-Mecklenburg Bd. of Ed.*, 269 N.C. 667, 670, 153 S.E.2d 335, 338 (1967) (holding mixed questions of law and fact arise when "[t]he determination . . . requires an application of principles of law to the determination of facts"). We are not bound by the labels given these determinations by the trial court in conducting our analysis. *In re David A. Simpson, P.C.*, 211 N.C. App. 483, 487-88, 711 S.E.2d 165, 169 (2011). The standards of review we apply to specific aspects of the trial court's orders are discussed below in the Analysis Section of this opinion.

. . . .

7. A writ of mandamus is inappropriate because [Ms. Rubin] has failed to show that she has a clear legal right to demand removal of the sewer line and that the Town is under a plainly defined, positive legal duty to remove it. Mandamus is appropriate to compel the performance of a ministerial act but not to establish a legal right. *Meares v. Town of Beaufort*, 193 N.C. App. 49, 667 S.E.2d 224 (2008); *Mears v. Board of Education*, 214 N.C. 89, 91, 197 S.E.2d 752, 753 (1938).

8. The Court has the inherent authority to enforce its own orders. However, the Court is not authorized and refuses to expand this Judgment beyond its terms, read in additional terms, and/or order mandatory injunctive relief that [Ms. Rubin] did not request or plead. *State Highway Commission v. Thornton,* 271 N.C. 227, 156 S.E.2d 248 (1967).

9. Regardless of the Court's authority, the Court does not read the Judgment the way [Ms. Rubin] suggests and the Court does not agree the Judgment expressly or implicitly requires removal of the sewer line. [Ms. Rubin] could have requested the Court grant her injunctive relief before the sewer pipe was installed under her property but she did not do so. The Court will not now require the Town to remove the sewer line.

. . . .

11. Given the Court's dismissal of the condemnation complaint as null and void, the installation of the underground sewer line by the Town on 27 July 2015 was a taking of [Ms. Rubin]'s property by the Town that was not subject to a condemnation complaint, and thus was an inverse condemnation of an underground sewer easement. . . .

13.    [Ms. Rubin]'s allegations that the condemnation complaint resulted in a constitutional violation and [Ms. Rubin]'s comments about fairness do not support or provide a basis for the granting of the Motion.  Further, the Supreme Court in [*Wilkie v. City of Boiling Springs,* 370 N.C. 540, 809 S.E.2d 853 (2018)], in spite of addressing constitutional issues with condemnations, held that a landowner has a claim for just compensation regardless of whether a taking is for a public or private purpose.  The Supreme Court did not state that the landowner had a claim for permanent injunctive relief.  Where there is an adequate remedy at law, injunctive relief, which is what [Ms. Rubin] seeks, will not be granted.

14.    [Ms. Rubin] has an adequate remedy at law—i.e. compensation for inverse condemnation. . . . The Town's pending declaratory judgment action . . . provides [Ms. Rubin] an avenue to pursue her remedy at law for the inverse condemnation of the sewer easement— compensation.

15.  As such, the Court declines to enforce the Judgment as [Ms. Rubin] requests and declines to issue a writ of mandamus.

### 4.  *The Order Granting Relief from Judgment*

The trial court's second order in the direct condemnation action granted the Town's motion for relief from the Judgment.  In that order, the trial court made findings of fact and conclusions of law consistent with several of those made in the order denying Ms. Rubin's motion to enforce the Judgment, including conclusions that an inverse condemnation had occurred and Ms. Rubin's only avenue for relief was an inverse condemnation claim for money damages.  The second order added

several conclusions of law explaining why the Town was entitled to relief from the

Judgment:

> 3. It is just and equitable to allow the Town relief from the prospective application of the Judgment as it relates to the underground sewer pipe and corresponding easement.
>
> 4. [Ms. Rubin's] failure to seek and obtain injunctive relief prior to the construction of the sewer pipe and the Town's acquisition of the sewer easement by inverse condemnation renders the Judgment moot as to the installation of the sewer pipe and corresponding easement. . . .
>
> 5. The Judgment's dismissal of the condemnation proceeding had no effect on the rights inversely taken. . . .
>
> 6. At the time of entry of the Judgment, the question of whether the Town had the authority to condemn the sewer easement described in the original condemnation action was moot—specifically as to the installation of the sewer pipe and inversely condemned easement.
>
> 7. Since the Judgment against the Town is moot, the Court grants the Town relief from the prospective application of the Judgment as it relates to the existence of the underground sewer pipe and corresponding easement on [Ms. Rubin's] property.
>
> 8. The Judgment is void as it relates to the installed sewer pipe and corresponding easement because the trial court did not have jurisdiction over [these] issues at the time of the entry of the Judgment. The issue of whether the Town could maintain a sewer line across [Ms. Rubin's] property no longer existed at the time that Judgment was entered. [Ms. Rubin] did not seek an injunction prior to construction and the Town had already constructed the sewer easement. . . .

9. Further the Judgment found the original condemnation complaint null and void and dismissed it; it is as if it was never filed. Therefore, the Town physically invaded [Ms. Rubin's] property to construct a public sewer line on 27 July 2015 without a condemnation action—which under North Carolina law is an inverse taking.

10. Prior to the entry of the Judgment on 18 October 2016, the Town had already inversely taken and owned the sewer easement across [Ms. Rubin's] property on 27 July 2015. Since the sewer easement had been inversely taken prior to the entry of the Judgment, the court lacked subject matter jurisdiction to enter the Judgment to the extent the Judgment is interpreted to negatively affect the installed sewer pipe and corresponding easement.

11. The absence of jurisdiction means the Judgment is void. A void judgment is a legal nullity. . . .

12. Since the Judgment against the Town is void as to [Ms. Rubin's] challenge to the installed sewer pine and corresponding easement, the Town should be granted the prospective relief from the Judgment pursuant to Rule 60(b)(4).

13. In addition, the Town is given prospective relief from the judgment pursuant to Rule 60(b)(6), as Rule 60(b)(6) may be properly employed to grant relief from a judgment affected by a subsequent change in the law. . . .

14. In the Judgment, the Court stated that the paramount reason for the taking of the sewer easement described in the complaint was for a private purpose and the public's interest was merely incidental. However, prior to entry of judgment, the Town had already constructed the sewer pipe and acquired the sewer easement by inverse condemnation.

15. In 2018, the North Carolina Supreme Court reversed

the Court of Appeals and ruled that public use or purpose is not an element of an inverse condemnation claim. . . . Rule 60(b)(6) may be properly employed to grant relief from a judgment affected by a subsequent change in the law. . . .

16. As a result of the *Wilkie* decision from the Supreme Court, the legal basis for the Judgment no longer exists to the extent the Judgment is interpreted to negatively affect the installed sewer pipe and corresponding easement. [Ms. Rubin] alleges that the Town took the sewer easement on her property for a private purpose and thus lacked authority to take her property. However, public purpose is not an element of inverse condemnation. Moreover, [the] Town acquired ownership of the sewer easement on 27 July 2015 prior to entry of the Judgment. All easement rights in the property transferred to the Town and were owned by it prior to entry of Judgment. Consequently, [the] Town should be granted relief from Judgment.

Ms. Rubin timely noticed an appeal from both orders. Following oral argument, both parties filed supplemental briefs with this Court.[6]

## II.   ANALYSIS

Ms. Rubin argues the trial court erred in concluding: (1) the installation of the pipe resulted in an inverse condemnation; (2) the inverse condemnation rendered the Judgment moot and void; (3) injunctive relief, either in the form of a writ of mandamus or otherwise, was unavailable to enforce the Judgment; and (4) inverse

---

[6] Ms. Rubin submitted her supplemental arguments through a motion for leave to submit a supplemental response, and the Town provided its additional briefing in its response to Ms. Rubin's motion. We allow Ms. Rubin's motion and consider these supplemental materials submitted by the parties.

condemnation is the only available remedy for the Town's constitutional violation. We address the applicable standard of review before addressing each argument in turn.

*1. Standard of Review*

Findings of fact, when left unchallenged on appeal or supported by competent record evidence, are binding on this Court. *Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011). Conclusions of law are generally reviewable de novo, *Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 180, 695 S.E.2d 429, 435 (2010), and mixed questions of law and fact are fully reviewable on appeal, *Hinton v. Hinton*, 250 N.C. App. 340, 347, 792 S.E.2d 202, 206 (2016). However, when the trial court reaches a legal conclusion on whether to exercise its discretionary inherent authority, "we need determine only whether they are the result of a reasoned decision." *Sisk*, 364 N.C. at 435, 695 S.E.2d at 180 (citations omitted); *see also In re Cranor*, 247 N.C. App. 565, 573, 786 S.E.2d 379, 385 (2016) ("The proper standard of review for acts by the trial court in the exercise of its inherent authority is abuse of discretion." (citation omitted)). "When discretionary rulings are made under a misapprehension of the law, this may constitute an abuse of discretion," *Gailey v. Triangle Billiards & Blues Club, Inc.*, 179 N.C. App. 848, 851, 635 S.E.2d 482, 484 (2006) (citations omitted), and "the orders or rulings of the trial judge may be vacated and the case remanded for further proceedings, modified or reversed, as the rights of the parties and the

applicable law may require," *State v. Cornell*, 281 N.C. 20, 30, 187 S.E.2d 768, 774 (1972) (citations omitted).

*2. Installation of the Pipe Did Not Vest the Town with Title as a Matter of Law*

In both orders, the trial court concluded that the installation of the pipe resulted in an inverse condemnation of a sewer easement on Ms. Rubin's property independent of the direct condemnation action. We agree with Ms. Rubin that the trial court erred in this respect.

Our Supreme Court has recently described inverse condemnations as follows:

> "Inverse condemnation" is a term often used to designate a cause of action *against a governmental defendant* to recover the value of property which has been taken in fact by the governmental defendant, *even though no formal exercise of the power of eminent domain has been attempted by the taking agency.*

*Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 552, 809 S.E.2d 853, 861 (2018) (cleaned up) (emphasis added).[7] This general description accords with the right of action afforded to landowners by statute. N.C. Gen. Stat. § 136-111 authorizes inverse condemnation suits by landowners against the Department of Transportation when "land or a compensable interest therein has been taken by . . . the Department

---

[7] Consistent with our Supreme Court's current practice, *see, e.g., In re G.G.M.*, ___ N.C. ___, ___, 2021-NCSC-25, ¶ 22 (2021), we use the parenthetical "(cleaned up)" to denote removal of extraneous punctuation and citations without alteration of the quoted passage's meaning. *See generally* Jack Metzler, *Cleaning Up Quotations*, 18 J. Appellate Prac. & Process 143 (2017) (discussing the use and purposes of the "cleaned up" parenthetical).

of Transportation and no complaint and declaration of taking has been filed." So inverse condemnation is a claim assertable *by landowners* against a government entity "which forces a governmental body to exercise its power of condemnation, even though it may have no desire to do so." *Hoyle v. City of Charlotte*, 276 N.C. 292, 302, 172 S.E.2d 1, 8 (1970) (quotation marks and citation omitted).

¶ 19        Although caselaw uniformly establishes that inverse condemnation claims inure in favor of landowners against government entities that have declined to pursue direct condemnation, the Town maintains that its installation of the sewer pipe—and subsequent defeat in the direct condemnation action—mean that the Town can compel a determination—against Ms. Rubin's express interest—that it took title to a sewer easement by inverse condemnation. The Town specifically asserts that: (1) the Judgment dismissing the condemnation action voided the condemnation *ab initio*; and (2) the installation of the sewer pipe therefore amounted to a separate intrusion vesting title in the Town through inverse condemnation. The Town's argument is not supported by the facts or the law.

¶ 20        Upon filing its direct condemnation action, the Town took legal title to a 40'-wide sewer easement across Ms. Rubin's property through a statutory "quick take" provision. N.C. Gen. Stat. § 136-104 provides that title to property, "together with the right to immediate possession" of the land, vests in the condemnor upon the filing of its complaint, the declaration of taking, and deposit of a bond with the trial court.

Title to the easement at issue in this case included the right "to construct . . . a system of . . . pipes . . . under, through, and across" the easement area.

The Town entered onto Ms. Rubin's property and installed a sewer line within the 40' strip under the rights granted to it by the easement obtained at the outset of the direct condemnation action.[8] That the Judgment would later decree the Town's "claim to [Ms. Rubin]'s property by Eminent Domain . . . null and void" does not obviate, as a factual matter, that the Town installed the pipe under the "quick take" title granted to the Town in the direct condemnation action.

As for whether the installation of the sewer pipe and the Judgment's decree vested the Town with title by inverse condemnation as a matter of law, two pertinent cases, *State Highway Comm'n v. Thornton*, 271 N.C. 227, 156 S.E.2d 248 (1967), and *Town of Midland v. Morris*, 209 N.C. App. 208, 704 S.E.2d 329 (2011), preclude a holding in favor of the Town on this issue.

In *Thornton*, the North Carolina State Highway Commission (the "Commission") filed a direct condemnation action to construct a roadway across land belonging to the Thorntons. 271 N.C. at 229, 156 S.E.2d at 250. The Commission began construction five days after filing its action and, by the time the Thorntons

---

[8] Indeed, the record includes an affidavit from the Town's assistant manager and former utilities director stating that the direct condemnation action conveyed title to the 40' easement for completion of a "Gravity Sewer Project" and that the Gravity Sewer Project was completed through installation of the sewer pipe at issue here.

filed their answer challenging the taking as for a non-public purpose, construction

was 96 percent complete. *Id.* at 230, 156 S.E.2d at 251. The matter proceeded to trial

after the road was entirely finished, and the trial court entered a judgment in favor

of the Thorntons declaring the taking as not for a public purpose. *Id.* at 231-32, 156

S.E.2d at 251-52. On appeal to the Supreme Court, the Commission contended that

the construction of the road precluded the Thorntons from protesting the taking. *Id.*

at 237, 156 S.E.2d at 256. Though the Supreme Court ultimately reversed the trial

court and upheld the taking as for a public purpose, it did so only after rejecting this

argument by the Commission:

> Even if the Commission now finds itself embarrassed by its
> having constructed the road prematurely, upon its own
> assumption that the defendants would not assert a defense
> which the [direct condemnation] statute authorizes (i.e.,
> the Commission's lack of power to condemn the land), the
> Commission may not assert such embarrassment as a bar
> to this right of the defendants. *The Commission may not,
> by precipitate entry and construction, enlarge its own
> powers of condemnation . . . .*

*Id.* (emphasis added). The Supreme Court also plainly held that the Thorntons were

"not estopped to assert that the land in question still belongs to them, *free of any right*

*of way across it*[,]" *id.* at 238, 136 S.E.2d at 257 (emphasis added), and, in the event

they prevailed, could assert "whatever rights they may have against those who have

trespassed upon their land and propose to continue to do so." *Id.* at 240, 156 S.E.2d

at 258. *Thornton* establishes that completion of a project subject to a direct

condemnation action does not preclude a return of title—free and clear of any interest held by the State—to the prevailing landowner.

¶ 24    This Court reached a similar result in *Midland*, when the Town of Midland filed a direct condemnation action to construct a natural gas pipeline across private property. *Midland*, 209 N.C. App. at 211-13, 704 S.E.2d at 333-34. The private landowners argued the pipeline was not for a public purpose and moved for a preliminary injunction. *Id.* at 213, 704 S.E.2d at 334. The trial court denied the motion for a preliminary injunction and granted summary judgment for Midland. *Id.* Pending the property owners' appeal to this Court, Midland completed the pipeline and argued that the appeal was moot because construction was complete. *Id.* We disagreed, holding that "if this Court finds in their favor, [the] [p]roperty [o]wners will be entitled to relief . . . in the form of return of title to the land." *Id.* at 213-14, 704 S.E.2d at 334 (citing *Thornton*, 271 N.C. at 241, 156 S.E.2d at 259) (additional citations omitted). We further explained:

> We are wholly unpersuaded by Midland's argument that, even where a city flagrantly violates the statutes governing eminent domain, that city can obtain permanent title to the land by fulfilling the purpose of a condemnation before final judgment on the validity of condemnation is rendered.

*Id.* at 214, 704 S.E.2d at 335.

¶ 25    Both *Thornton* and *Midland* establish that a government body cannot take title to private property for a non-public purpose simply by filing a direct condemnation

action and completing the construction project.  In this case, the Town's position that it took title to a sewer easement by inverse condemnation through construction of the sewer pipe during the pendency of the direct condemnation action is irreconcilable with *Thornton*'s prohibition against the enlargement of the government's condemnation powers "by precipitate entry and construction."  271 N.C. at 237, 156 S.E.2d at 256.  It also conflicts with this Court's holding in *Midland* that title reverts to the landowner after a successful challenge to a condemnation action irrespective of whether the project was completed, as a "city [cannot] obtain permanent title to the land by fulfilling the purpose of a condemnation before final judgment . . . ."  209 N.C. App. at 214, 704 S.E.2d at 335.  We therefore hold the trial court erred in its conclusions of law, found throughout both orders, establishing that the Town took an easement by inverse condemnation when it completed the installation of the sewer pipe across Ms. Rubin's property.

¶ 26        We are also unpersuaded by the Town's argument that *Wilkie* supports the trial court's conclusions to the contrary.  That decision is distinguishable for at least three reasons.  First, *Wilkie* involved an inverse condemnation claim *brought by the landowners, i.e.*, the parties with the right to bring an inverse condemnation claim against the government.  370 N.C. at 552, 809 S.E.2d at 861-62*; see also* N.C. Gen. Stat. § 136-111 (2019) (authorizing a party "whose land . . . has been taken" to file a statutory inverse condemnation claim); *Ferrell v. Dep't of Transp.*, 104 N.C. App. 42,

46, 407 S.E.2d 601, 604 (1991) (observing that "*property owners* have a constitutional right to just compensation for takings" (citation omitted) (emphasis added)). Second, *Wilkie* did not involve the completion of a project subject to a disputed direct condemnation, as occurred in both *Thornton* and *Midland*. Lastly, though *Wilkie* held that *landowners* do not need to show that the taking was for a public purpose to prevail on an inverse condemnation claim, it did so in part because the public purpose requirement serves as a shield to protect the landowner from government intrusion rather than as a sword to cut away private property rights. 370 N.C. at 552-53, 809 S.E.2d at 862. To adopt the Town's interpretation of *Wilkie* would weaponize that decision and deprive private property owners of the public purpose protection. This we will not do.

¶ 27     The Town's theory of the law would also open the door to numerous constitutional harms. For example, under the Town's theory, a municipality could pursue a direct condemnation action to pave a landowner's gravel driveway for no public purpose whatsoever, even if the landowner, in the exercise of his private property rights and out of a personal preference for gravel, had never sought to increase the value of his lot by paving the driveway. Then suppose, akin to *Thornton*, the municipality paved the landowner's driveway before the landowner filed an answer. If the municipality voluntarily dismissed its condemnation action or lost on the merits at trial, the theory that inverse condemnation damages were the property

owner's sole remedy would preclude relief for the municipality's flagrant violation of the landowner's constitutional rights, as an inverse condemnation action must show both an intrusion *and* "that the interference caused a decrease in the fair market value of [the property owner's] land as a whole." *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 856, 786 S.E.2d 919, 926 (2016). We do not believe the law of inverse condemnation can be used to facilitate such an abuse of the government's eminent domain power.

### 3. *The Judgment Is Not Moot*

¶ 28    We further hold that the trial court erred in concluding the Judgment is moot. The trial court reached this conclusion in part on the basis that the Town took title to the easement by inverse condemnation. As explained *supra*, we hold that no such permanent vesting of title in the Town has occurred. If the completion of the pipeline in *Midland* did not preclude a return of title upon a final determination that the direct condemnation was not pursued for a public purpose, 209 N.C. App. at 213-14, 704 S.E.2d at 334, the Town's completion of the sewer line cannot moot Ms. Rubin's judgment to that effect.

### 4. *The Judgment is Not Void*

¶ 29    The trial court also erred in concluding that the Judgment was void "as it relates to the installed sewer pipe and corresponding easement because the trial court did not have jurisdiction over these[] issues at the time of the entry of the Judgment."

The trial court premised this legal conclusion on its erroneous conclusion that an inverse condemnation had already occurred. As we have explained, the Town's direct condemnation action and installation of the sewer pipe did not automatically vest it with title to an easement by inverse condemnation after the trial court determined that the taking was not for a public purpose, and Ms. Rubin is entitled to pursue relief despite completion of the project. *See Thornton*, 271 N.C. at 238, 156 S.E.2d at 257; *Midland*, 209 N.C. App. at 213-14, 704 S.E.2d at 334.

¶ 30      During the direct condemnation action, The Town maintained that it had installed the pipe pursuant to the easement obtained through its "quick take" powers. The trial court, in resolving the dispute raised by the direct condemnation complaint and Ms. Rubin's answer contesting it, therefore had jurisdiction to determine whether the easement taken by the Town constituted a lawful taking for a public purpose irrespective of the installation of the sewer pipe. The Judgment's resolution of that issue in favor of Ms. Rubin and against the Town did not divest the trial court of jurisdiction to enforce the judgment. *See, e.g., Wildcatt v. Smith*, 69 N.C. App. 1, 11, 316 S.E.2d 870, 877 (1984) ("It is . . . true that while a court loses jurisdiction over a cause after it renders a final decree, it retains jurisdiction to correct or enforce its judgment." (citations omitted)). We hold that the Judgment, contrary to the Town's claim that it "is void as to Rubin's ability to contest the installed sewer line and corresponding easement," was not rendered void in any respect by the installation of

the sewer line. As our Supreme Court held in *Thornton*, Ms. Rubin is "not estopped to assert that the land in question still belongs to [her], free of any right of way across it," 271 N.C. at 238, 156 S.E.2d at 257, and she may seek to vindicate "whatever rights [she] may have against those who have trespassed upon [her] land and propose to continue to do so," *id.* at 240, 156 S.E.2d at 258, despite the sewer pipe's construction.

¶ 31     Because the Judgment was neither moot nor void and the Town has not taken title by inverse condemnation, we reverse the trial court's order granting the Town relief from the Judgment.

### 5. *The Effect of the Judgment*

¶ 32     We next address what effect the Judgment has and whether it affords Ms. Rubin a right to obtain previously unpled mandatory injunctive relief as a matter of law. We hold, following *Thornton* and *Midtown*, that the Judgment reverted title to Ms. Rubin in fee, restoring to her exclusive rights in the tract and divesting the Town of any legal title or lawful claim to encroach on it. *See Thornton*, 271 N.C. at 238, 156 S.E.2d at 257 ("The [Thorntons] are not estopped to assert that the land in question still belongs to them, free of any right of way across it."); *Midland*, 209 N.C. App. at 213-14, 704 S.E.2d at 334 ("[I]f this Court finds in their favor, [the] [p]roperty [o]wners will be entitled to relief . . . in the form of return of title to the land.").

¶ 33     But because Ms. Rubin did not seek mandatory injunctive relief in the direct condemnation action, she is not entitled to that remedy by the plain language of the

Judgment. *See Wildcatt*, 69 N.C. App. at 11, 316 S.E.2d at 877 (holding that a trial court's jurisdiction after final judgment is generally limited to enforcing the judgment). Ms. Rubin's answer and defense in the direct condemnation action asserted that the Town's taking of a 40' easement to construct a sewer line was beyond the constitutional exercise of the Town's eminent domain powers. The trial court agreed, concluded that the taking was unconstitutional, and rendered its Judgment declaring null and void both the direct condemnation action and the Town's "quick take" title to the easement. The Judgment, given the issues raised before the trial court, did nothing more than that.

¶ 34        We acknowledge that mandatory injunctive relief is available as an ancillary remedy to an action resolving title to land. *See English v. Holden Beach Realty Corp.*, 41 N.C. App. 1, 13, 254 S.E.2d 223, 234 (1979). But a mandatory injunction is available as ancillary relief only if it has been requested while the principal action is pending. *See Jackson v. Jernigan*, 216 N.C. 401, 403-04, 5 S.E.2d 143, 145 (1939) (noting mandatory injunctive relief is available as an ancillary remedy to a continuing trespass in an action resolving title "to protect the subject of the action against destruction or wrongful injury *until the legal controversy has been settled*" but it is unavailable "when it is not in protection of some right *being litigated*" (emphasis added)). Ms. Rubin failed to seek a mandatory injunction while the direct condemnation action was pending. Mandatory injunctive relief falls outside the scope

of the Judgment. For this reason, the trial court did not abuse its discretion in declining to exercise its inherent authority to enforce the Judgment in the manner Ms. Rubin requested.

¶ 35 Ms. Rubin asserts *Thornton* held that dismissal of a direct condemnation action is equivalent to a mandatory injunction requiring restoration of the property to its former condition. She misreads *Thornton*. There, as previously discussed, the Commission condemned the Thorntons' land; though they protested the action by asserting it was not for a public purpose, they did not seek to enjoin construction. 271 N.C. at 229-31, 156 S.E.2d at 250-52. After the road was complete, the trial court ruled that the condemnation was not for a public purpose and entered a judgment "permanently restraining [the Commission] (and enjoin[ing] [it]) from proceeding with the condemnation and appropriation of [the Thorntons'] lands." *Id.* at 235, 156 S.E.2d at 255 (quotation marks omitted). Our Supreme Court struck down the trial court's judgment. *Id.* at 236, 156 S.E.2d at 255. The Court drew a line between injunctive relief to halt *construction* and injunctive relief to halt a condemnation *proceeding*:

> An injunction against the institution or maintenance of condemnation proceedings, as distinguished from an injunction to restrain construction, is not proper[l]y issued, however, where the ground asserted therefor is one which the landowner may assert as a defense in the condemnation proceeding itself, for, in that event, the landowner has an adequate remedy at law.

*Id.* (citation omitted). The Supreme Court held that because the Thorntons' defense would mandate dismissal of the direct condemnation proceeding, an injunction prohibiting the proceeding from continuing would be redundant. *Id.* *Thornton* establishes that it is unnecessary to enjoin a proceeding that has been extinguished by dismissal; *Thornton* does not hold that dismissal of a condemnation action is equivalent to a mandatory injunction to undo the construction and restore the land.

¶ 36    Ms. Rubin further cites prior decisions from this Court, as well as from other jurisdictions, to support her assertion that the Judgment directly affords mandatory injunctive relief requiring the Town to remove the sewer pipe irrespective of her failure to raise the issue in the direct condemnation action. None of the cases she cites—with one exception—addresses whether construction completed by the condemnor during the pendency of the direct condemnation action must be removed if the contesting landowner prevails. *See, e.g., Midland*, 209 N.C. App. at 213-14, 704 S.E.2d at 334 (holding a prevailing landowner in a direct condemnation action is "entitled to relief . . . in the form of return of *title* to the land" (emphasis added)); *In re Rapp*, 621 N.W.2d 781, 784 (Minn. 2001) (holding that a prevailing landowner is entitled to "relief in the form of the return of his property" notwithstanding the government's completion of construction).

¶ 37    In the one North Carolina decision Ms. Rubin cites in which the trial court

issued a mandatory injunction in a direct condemnation action, the landowners requested that remedy by counterclaim during the pendency of the action and the injunction was not challenged on appeal. *City of Statesville v. Roth*, 77 N.C. App. 803, 805-06, 336 S.E.2d 142, 143 (1985). As explained below, our Supreme Court has more recently held that such injunctive relief is generally not available against the State. *See Clark v. Asheville Contracting Co., Inc.*, 316 N.C. 475, 485-86, 342 S.E.2d 832, 838 (1986) (holding injunctive relief was unavailable against the Department of Transportation for an occupation of private property that was not for a public purpose).

¶ 38     We also are unpersuaded by Ms. Rubin's reliance on N.C. Gen. Stat. §§ 40A-12, 1-302, and Rule 70 of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 40A-12 provides that "[w]here the procedure for conducting an action under this Chapter is not expressly provided for in this Chapter or by the statutes governing civil procedure . . . , the judge before whom such proceeding may be pending shall have the power to make all the necessary orders and rules of procedure necessary to carry into effect the object and intent of this Chapter." Here, Ms. Rubin seeks more than just a procedural ruling; she seeks the additional substantive right to compel removal of the Town's sewer pipe by order of the trial court. As we have explained, mandatory injunctive relief is ancillary to—and thus exceeds—the ordinary relief afforded by a judgment resolving a dispute as to title. *See English*, 41 N.C. App. at

13, 254 S.E.2d at 234 (noting mandatory injunctive relief is ancillary to an action seeking to resolve disputes of title and possession of land).

¶ 39    N.C. Gen. Stat. § 1-302 allows enforcement of "a judgment [that] requires . . . the delivery of real . . . property" and Rule 70 allows a trial court to order the conveyance of title "[i]f a judgment directs a party to execute a conveyance of land[.]"  The Judgment in this case does neither.  It simply restores title to Ms. Rubin.  With title in hand, she is left to pursue the "rights [she] may have against those who have trespassed upon [her] land and propose to continue to do so." *Thornton*, 271 N.C. at 240, 156 S.E.2d at 258.

¶ 40    Ms. Rubin further proposes, relying on *Thornton,* that the Judgment as a matter of law established her right to eject the Town by writ of mandamus.  While mandatory injunctive relief may be available to her through a trespass claim for the Town's continuing encroachment, the Judgment does not provide that relief.  A mandatory injunction is available only after "consider[ation] [of] the relative convenience-inconvenience and the comparative injuries to the parties."  *Clark*, 316 N.C. at 488, 342 S.E.2d at 839 (citation omitted).[9]  This Court has described that balancing test as follows:

---

[9] This is in contrast to encroachment actions between private landowners; because neither party possesses the right to private eminent domain, the trespasser cannot be compelled to buy the land she has unlawfully built upon and the injured landowner cannot

> Factors to be considered are whether the [trespassing] owner acted in good faith or intentionally built on the [injured party's] land and whether the hardship incurred in removing the structure is disproportionate to the harm caused by the encroachment. Mere inconvenience and expense are not sufficient to withhold injunctive relief. The relative hardship must be disproportionate.

*Williams*, 82 N.C. App. at 384, 346 S.E.2d at 669 (citing Dobbs, Remedies, § 5.6 (1973)). If Ms. Rubin establishes the Town's trespass and its liability therefor, the trial court may grant mandatory injunctive relief only after weighing the equities as set forth above. *See Clark*, 316 N.C. at 488, 342 S.E.2d at 839.

Because a writ of mandamus is available only to enforce an established right, and the Judgment in this case did not establish the right Ms. Rubin seeks to enforce, she is not entitled to a writ of mandamus. *See Ponder v. Joslin*, 262 N.C. 496, 504, 138 S.E.2d 143, 149 (1964) ("The function of the writ is . . . not to establish a legal right . . . .").

### 6. *Mandatory Injunctive Relief is Available by Separate Trespass Claim*

The Judgment does not provide the Town an easement by inverse condemnation as a matter of law. Ms. Rubin cannot be compelled to surrender title to the Town. The Judgment also does not afford Ms. Rubin the mandatory injunctive

---

be compelled to sell the property encumbered by the encroachment. In such a circumstance, mandatory injunctive relief to destroy the encroachment is the only relief available and will be awarded as a matter of law. *Williams v. South & South Rentals, Inc.,* 82 N.C. App. 378, 384, 346 S.E.2d 665, 669 (1986).

relief she seeks. The question remains whether the trial court correctly concluded that the Judgment precluded mandatory injunctive relief. We hold that the trial court erred in this respect. While Ms. Rubin is not entitled to post-judgment mandatory injunctive relief in the direct condemnation action, she may bring a trespass claim against the Town in pursuit of the mandatory injunctive relief she seeks. We therefore vacate the trial court's orders insofar as they preclude the availability of mandatory injunctive relief, but we ultimately affirm the trial court's denial of Ms. Rubin's motion to enforce the Judgment.

    a.   Caselaw Regarding Remedies for Government Trespass

The proposition that a government body occupying private property outside its eminent domain powers is committing a trespass—and may be ejected for it—is not a new one. In *McDowell v. City of Asheville*, 112 N.C. 747, 17 S.E. 537 (1893), our Supreme Court held that a town committing such an act "may be treated as a trespasser and sued in ejectment." 112 N.C. at 750, 17 S.E. at 538. The aggrieved landowner may also, however, "elect [not] to treat the [town] as a trespasser . . . [and] compel the [town] to assess the damages as provided by its charter," *id.*, effectively compelling a payment of just compensation by inverse condemnation. *See, e.g., Hoyle*, 276 N.C. at 302, 172 S.E.2d at 8. This framing of the encroaching town as a trespassing tortfeasor and the ability of the landowner to *elect* damages *or* ejectment is generally consistent with *Lloyd v. Venable*, 168 N.C. 531, 84 S.E. 855 (1915), in

which a town that lacked any eminent domain powers built a street over private land. 168 N.C. at 534, 84 S.E. at 857. In holding the landowner's claim for damages could proceed, our Supreme Court held that the town's "entry . . . was . . . unlawful . . . [but] the plaintiff can waive the tortious entry and the want of power to condemn, and recover a just and reasonable compensation for the property taken." *Id.*

¶ 44        In the century since *McDowell* and *Lloyd*, our Supreme Court has limited monetary and injunctive relief available to private landowners following wrongful intrusion by the government.

¶ 45        In *State Highway Comm'n v. Batts*, 265 N.C. 346, 144 S.E.2d 126 (1965), the Commission, on behalf of the State, filed a condemnation action to pursue construction of a road across privately owned land and, in preparation for construction, cut down several trees on the property. 265 N.C. at 348, 144 S.E.2d at 127. The private landowners challenged whether the condemnation was for a public purpose and counterclaimed for damages to recover the value of the trees cut down by the Commission's employees. *Id.*, 144 S.E.2d at 128. The trial court initially entered a preliminary injunction barring construction but ultimately concluded the condemnation was for a public purpose. *Id.* at 349-50, 144 S.E.2d at 129. On appeal, the Supreme Court held that the condemnation was not for a public purpose and reversed the trial court's judgment. *Id.* at 360-61, 144 S.E.2d at 137. It also held, however, that the Commission could not be held liable for having cut down the trees:

> [The private landowners] alleged that the construction of [the] highway is beyond the scope of the [eminent domain] authority vested in the Commission and inferentially that acts done in furtherance thereof are also unauthorized. We have agreed. Therefore, the cutting of the trees was not a taking of private property for public use. It was merely an *unauthorized trespass by employees of the Commission, for which no cause of action exists against the Commission in favor of [the private landowners].* . . . An agency of the State is powerless to exceed the authority conferred upon it, *and therefore cannot commit an actionable wrong*.

*Id.* at 361, 144 S.E.2d at 137-38 (citations omitted) (emphasis added). *Batts* did not address the availability of injunctive relief to bar government intrusion onto private property for a non-public purpose.

¶ 46    In *Clark v. Asheville Contracting Co.,* 316 N.C. 475, 342 S.E.2d 832 (1986), our Supreme Court held that mandatory injunctive relief cannot be obtained against the State following its trespass on private land. 316 N.C. at 485, 342 S.E.2d at 838. There, a contractor building a highway near Asheville for the Department of Transportation ("DOT") dumped rock waste in a residential subdivision. 316 N.C. at 478-79, 342 S.E.2d at 834. The landowners sued DOT, the contractor, and the corporate president of the contractor, seeking damages in tort, a mandatory injunction ordering the removal of the rock waste and, failing that, just compensation for the taking by DOT. *Id.* All defendants cross-claimed each other and filed motions to dismiss and for summary judgment; at the hearing on those motions, the landowners elected to forego their claims for monetary damages in favor of an "order

that the [DOT] and the contractor remove the waste previously deposited on the property in question." *Id.* at 482, 342 S.E.2d at 836. The landowners moved for summary judgment, and DOT sought to dismiss all claims against it on the grounds that it was immune from suit. *Id.* at 482-83, 342 S.E.2d at 836. The trial court denied DOT's motions and, after hearing evidence, concluded that the dumping of waste was a taking for a non-public purpose. *Id.* It then ordered that the defendants, including DOT, "cease and desist, and eliminate the nonconforming use . . . and . . . remove all waste rock material placed on the property." *Id.* at 483, 342 S.E.2d at 836. DOT appealed.

¶ 47    The Supreme Court held that the trial court erred in denying summary judgment for DOT. *Id.* at 484, 342 S.E.2d at 837. No party challenged the trial court's determination that the waste disposal was not for a public purpose, so the Supreme Court took that conclusion as true. *Id.* It then held, citing both *Thornton* and *Batts*, that the landowners could not pursue their remedy against DOT for the unauthorized taking:

> As the acts the plaintiffs complain of were not for a public purpose, they were beyond the authority of DOT to take property for public use in the exercise of its statutory power of eminent domain. Since DOT as a matter of law is incapable of exceeding its authority, the acts complained of could not be a condemnation and taking of property *by DOT* or an actionable tort *by DOT*. At most, the acts complained of could have been unauthorized trespasses by agents of DOT, for which no actionable claim exists against DOT.

*Id.* at 485, 342 S.E.2d at 838 (citing *Thornton*, 271 N.C at 236, 156 S.E.2d at 255; *Batts*, 265 N.C. at 361, 144 S.E.2d at 137) (additional citations omitted). The Supreme Court held that DOT was immune to claims for both damages *and* injunctive relief: " [']The owner of property cannot maintain an action against the State or any agency of the State in tort for damages to property (except as provided by statute . . . ). *It follows that he cannot maintain an action against it to restrain the commission of a tort.*['] " *Id.* at 486, 342 S.E.2d at 838 (quoting *Shingleton v. State*, 260 N.C. 451, 458, 133 S.E.2d 183, 188 (1963) (emphasis added)). Consistent with *Thornton* and *Batts*, the Supreme Court held that the aggrieved landowners had a valid cause of action against the individual public employees and officials responsible for the unauthorized taking:

> [T]he landowner is not without a remedy. When public officers whose duty it is to supervise and direct a State agency attempt or threaten to invade the property rights of a citizen in disregard of law, they are not relieved of responsibility by the immunity of the State from suit, even though they act or assume to act under the authority and pursuant to the directions of the State.

*Id.* (quoting *Shingleton*, 260 N.C. at 458, 133 S.E.2d at 188). The Supreme Court explained that "the acts of the defendants forming the basis of the claims by the plaintiffs . . . against DOT must be viewed as not having been a taking for a public use. Therefore, neither the plaintiffs nor the other defendants could maintain an

action against DOT arising from those acts." *Id.*[10]

¶ 48        In sum, *Clark* holds that private landowners cannot seek mandatory injunctive relief against a State agency to restore property following an unauthorized encroachment for a non-public purpose. In such instances, it is the individual public officials and agents of the State who are personally liable for the illegal acts "invad[ing] the property rights of a citizen in disregard of law . . . even though they act or assume to act under the authority and pursuant to the directions of the State." *Id.* (quoting *Shingleton*, 260 N.C. at 458, 133 S.E.2d at 188).

b.  Applying Precedent to This Case

¶ 49        *Batts* and *Clark* are distinguishable from this case because they concern the sovereign immunity of state *agencies* as opposed to *municipalities*.[11] Unlike the

---

[10] Immunity from suit does not bar inverse condemnation claims filed by landowners pursuant to statutory provisions authorizing such actions. *See Wilkie*, 370 N.C. 540, 551 n.9, 809 S.E.2d 853, 861 n.9 (holding *Clark* has no bearing on a statutory inverse condemnation claim brought under N.C. Gen. Stat. § 40A-51 because the Court's decision in *Clark* did not discuss or reference the statute).

[11] Although *Clark* and *Batts* do not explicitly label the immunity discussed in those decisions as sovereign immunity, the case law cited and rationale provided in those decisions are grounded in sovereign immunity law. For example, both *Clark* and *Batts* cite *Schloss v. State Highway & Public Works Comm'n*, 230 N.C. 489, 53 S.E.2d 517 (1949) for their holdings on immunity, and *Schloss* begins with the maxim "[t]hat the sovereign may not be sued, either in its own courts or elsewhere, without its consent, is an established principle of jurisprudence in all civilized nations." 230 N.C. at 491, 53 S.E.2d at 518 (citations omitted). Similarly, the legal fiction espoused in *Batts* and *Clark* that a State agency cannot commit a tortious act because it is unable to act outside its lawful authority is identical to the antiquated fiction that the "king can do no wrong" undergirding sovereign immunity. *See Epps v. Duke Univ.*, 122 N.C. App. 198, 203, 468 S.E.2d 846, 850 (1996) ("Sovereign immunity extends from feudal England's theory that the 'king can do no wrong.'" (citation omitted)).

State, municipalities enjoy only limited governmental immunity that does not extend to propriety functions. *Estate of Williams ex rel. Overton v. Pasquotank Cty. Parks & Recreation Dep't*, 366 N.C. 195, 199, 732 S.E.2d 137, 141 (2012).

¶ 50 A municipal sewer system that is supported by rates and fees is a propriety function not subject to governmental immunity. *See, e.g., Harrison v. City of Sanford*, 177 N.C. App. 116, 121, 627 S.E.2d 672, 676 (2006) ("The law is clear in holding that the operation and maintenance of a sewer system is a proprietary function where the municipality sets rates and charges fees for maintenance of sewer lines." (citations omitted)). The record in this case includes several sections from the Apex Town Code of Ordinances—submitted by the Town to the trial court—disclosing that the Town does charge rates and fees for its sewer service. On the record before us, we cannot conclude that the Town is immune to suit for trespassing.

¶ 51 We further distinguish *Batts* and *Clark* based on more recent precedents. Both of these decisions were decided years before our Supreme Court's landmark decision in *Corum v. Univ. of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992), which carved out an express exception to sovereign immunity for constitutional injuries. Under *Corum*, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Id.* at 782, 413 S.E.2d at 289. And, "when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must

prevail." *Id.* at 786, 413 S.E.2d at 292. Our Supreme Court has since made clear that *Corum* preserves constitutional claims arising out of tortious acts by the State that are otherwise barred by sovereign immunity. *See Craig ex rel. Craig v. New Hanover Cty Bd. of Educ.*, 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009) ("Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as an absolute bar to such a claim. But as we held in *Corum*, plaintiff may move forward in the alternative, bringing his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim.").

¶ 52          The Town maintains on appeal, as it did before the trial court, that the only remedy available to Ms. Rubin is money damages for inverse condemnation. The Town relies on *McAdoo v. City of Greensboro*, 91 N.C. App. 570, 372 S.E.2d 742 (1988). In *McAdoo*, Greensboro widened a road onto private property, and the property owners sought damages for trespass and inverse condemnation. 91 N.C. App. at 570-71, 372 S.E.2d 742-43. We held that the landowners could not recover monetary damages for both trespass and inverse condemnation, as "[t]he exclusive remedy *for failure to compensate* for a 'taking' is inverse condemnation[,]" and the landowners therefore "ha[d] no common-law right to bring a trespass action against a city." *Id.* at 573, 372 S.E.2d at 744 (citing *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E.2d 101 (1982)) (additional citation omitted) (emphasis added).

¶ 53    *McAdoo* is distinguishable for several reasons.  Most obviously, that case did not involve a taking that was adjudicated to be unconstitutional and for a non-public purpose.  And unlike the landowners in *McAdoo*, Ms. Rubin is not seeking to redress a "failure to compensate for a 'taking[,]' " *id.*, but has instead elected to pursue mandatory injunctive relief to remedy what was already determined to be an unconstitutional encroachment.  *Cf. Clark*, 316 N.C. at 488, 342 S.E.2d at 839 (holding that private landowners had valid claims only against DOT's contractor where they had "*elected* to pursue only the remedy of injunctive relief" instead of claims for monetary damages, including inverse condemnation); *Lloyd*, 168 N.C. at 531, 84 S.E. at 857 (providing a landowner injured by an intrusion onto private property not within the power of eminent domain "can waive the tortious entry and the want of power to condemn, and recover a just and reasonable compensation for the property taken"); *McDowell*, 112 N.C. at 747, 17 S.E. at 538 ("[I]t may be true . . . that the [City of Asheville] . . . may be treated as a trespasser, and sued in ejectment, but it is clear that such a remedy would not be appropriate to the peculiar circumstances of this case.  [City of Asheville] is still occupying the land as a street . . . and the plaintiffs evidently prefer that the street should remain, and therefore do not *elect* to treat [the City] as a trespasser."  (citation omitted)); *Thornton*, 271 N.C. at 241, 156 S.E.2d at 258 (describing *Lloyd* and *McDowell* as holding "where there is a taking not within the power of eminent domain the

landowner may *elect* to claim damages as if the taking had been lawful . . . .").

¶ 54        *McAdoo* held that a claim for damages in trespass did not lie because the applicable inverse condemnation statute, N.C. Gen. Stat. § 40A-51, was the exclusive remedy. 91 N.C. App. at 573, 372 S.E.2d at 744. But a different statute applies here, and the Town's actions compel a different result. N.C. Gen. Stat. § 136-111 authorizes an inverse condemnation claim against a condemnor only when "no complaint and declaration of taking has been filed." Because the Town *did* file a complaint and declaration of taking to install the sewer pipe at issue, a statutory inverse condemnation claim was not available to Ms. Rubin.

¶ 55        We also disagree with the Town's argument, presented in supplemental materials filed with this Court, that monetary compensation through an inverse condemnation action is a proper and "adequate state remedy" under *Corum*. As our Supreme Court unequivocally held in *Thornton*, payment for an occupation of private land by the State for a non-public purpose does not remedy the constitutional injury:

> It is not a sufficient answer that the landowner will be paid the full value of his land. It is his and *he may not be compelled to accept its value in lieu of it unless it is taken from him for a public use.* To take his property without his consent for a non-public use, *even though he be paid its full value*, is a violation of Article I, s 17, of the Constitution of this State and of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

271 N.C. at 241, 156 S.E.2d at 259.

¶ 56    We note that mandatory injunctive relief is not guaranteed by a successful claim for trespass against the Town. In *Clark*, our Supreme Court remanded the matter back down to the trial court for further findings of fact that "consider[ed] the relative convenience-inconvenience and the comparative injuries to the parties." 316 N.C. at 488, 342 S.E.2d at 839. This Court has since enumerated the factors to be considered in that balancing test. *Williams*, 82 N.C. App. at 384, 346 S.E.2d at 669. The Town may also have other defenses precluding relief and it "is entitled to all defenses that may arise upon the facts and law of the case." *Corum*, 330 N.C. at 786, 413 S.E.2d at 292.

¶ 57    We also do not agree with the Town's contention that Ms. Rubin's failure to raise mandatory injunctive relief in the direct condemnation action precludes her from pursuing it after entry of the Judgment. The mandatory injunctive relief sought was not, at the time Ms. Rubin filed her answer, a compulsory counterclaim barred by *res judicata*. *See, e.g., Murillo v. Daly*, 169 N.C. App. 223, 227, 609 S.E.2d 478, 481 (2005) ("As the [plaintiffs'] claims were not compulsory counterclaims in the previous action, they are not now barred by the doctrine of *res judicata*."). Whether a counterclaim is mandatory under our Rules of Civil Procedure is determined based on its maturity at the time of pleading. *See, e.g., Driggers v. Commercial Credit Corp.*, 31 N.C. App. 561, 564-65, 230 S.E.2d 201, 203 (1976) ("Where a cause of action, arising out of the transaction or occurrence that is the subject matter of the opposing

party's claim, matures or is acquired by a pleader after he has served his pleading, the pleader is not required thereafter to supplement his pleading with a counterclaim. . . . [S]uch supplemental pleading is not mandated and failure to do so will not bar the claim." (citations omitted)).

¶ 58        Here, the Town was not a trespasser until: (1) it installed the sewer pipe *after* Ms. Rubin had filed her answer, and; (2) the Judgment extinguishing the Town's right, title, and interest in Ms. Rubin's land went into effect.[12]  Furthermore, the sewer pipe represents a continuing trespass, "a peculiar animal in the law. . . . [E]ach day the trespass continues a new wrong is committed." *Bishop v. Reinhold*, 66 N.C. App. 379, 382, 311 S.E.2d 298, 300 (1984)*; see also John L. Roper Lumber Co. v. Elizabeth City Lumber Co.*, 140 N.C. 437, 442, 53 S.E. 134, 136 (1906) (holding recovery for the continuing injury of a trespass action is not barred by *res judicata* unless the claimant failed to establish in the prior action "the unlawful entry, or to show his possession, either actual or constructive, of the land upon which he alleges the defendant trespassed").

¶ 59        As for Ms. Rubin's failure to raise mandatory injunctive relief in the "all other issues" hearing required by N.C. Gen. Stat. § 136-108, we note that our Supreme

---

[12] The Judgment was temporarily stayed by the Supreme Court in the course of the Town's appeals, and the stay was eventually dissolved on 27 March 2019. *Town of Apex v. Rubin*, 372 N.C. 107, 825 S.E.2d 253 (2019).

Court in *Thornton*, which involved a roadway completed during a direct condemnation action subject to an "all other issues" hearing under the same statute, held that the Thorntons, who never sought to enjoin construction, could continue to claim ownership "free of any right of way" and pursue relief "against those who have trespassed upon their land and propose to *continue to do so*" if they prevailed. 271 N.C. at 238, 240, 156 S.E.2d at 257, 258 (emphasis added).

¶ 60       Like the Thorntons—had they prevailed—Ms. Rubin is entitled to relief against the Town for its trespass following the trial court Judgment dismissing the condemnation action and the exhaustion of the Town's appeal rights. Given the nature of a continuing trespass, and *Thornton*'s holding on the continued availability of trespass actions, Ms. Rubin may seek injunctive relief for the continuing trespass that the Town refuses to abate. *Id.* at 240, 156 S.E.2d at 258.

¶ 61       Finally, as noted by the parties at oral argument, this case presents a unique circumstance involving the continued use of a sewer line, installed pursuant to a direct condemnation action, that was determined to be for a non-public purpose and in violation of the landowner's constitutional rights. This case therefore differs significantly from those addressed by the inverse condemnation statutes N.C. Gen. Stat. §§ 136-111 and 40A-51, both of which apply when no condemnation action was filed by the government. We limit our holding to cases in which a municipality filed a direct condemnation action, constructed an improvement on the protesting

landowner's property, and later lost the condemnation action on the ground that it was for a non-public purpose. We do not address instances in which a taking occurred without the filing of a direct condemnation action.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, we vacate the provisions of the trial court's order denying Ms. Rubin's motion to enforce the Judgment that declared: (1) the Town took title to an easement by inverse condemnation; (2) the Judgment was moot; and (3) the Judgment was void. However, because the Judgment itself does not establish a right to mandatory injunctive relief and is instead available only through a separate claim against the Town upon a balancing of the equities, we affirm the trial court's denial of that relief. The trial court's order granting the Town relief from the Judgment is reversed.

VACATED IN PART; AFFIRMED IN PART; REVERSED IN PART.

Judges DILLON and JACKSON concur.